# United States Court of Appeals

FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued December 5, 2005         Decided January 31, 2006

No. 04-5417

MOHAMMED HUSSAIN,
APPELLANT

v.

R. JAMES NICHOLSON, SECRETARY, DEPARTMENT OF
VETERAN AFFAIRS,
APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 03cv00367)

*Dawn V. Martin* argued the cause and filed the briefs for appellant.

*Charlotte A. Abel*, Assistant U.S. Attorney, argued the cause for appellee. With her on the brief were *Kenneth L. Wainstein*, U.S. Attorney, *Michael J. Ryan*, Assistant U.S. Attorney, and *Karen A. Nappo*, Counsel, U.S. Department of Veterans Affairs. *R. Craig Lawrence*, Assistant U.S. Attorney, entered an appearance.

Before: HENDERSON, ROGERS, and TATEL, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* TATEL.

Concurring opinion filed by *Circuit Judge* ROGERS.

TATEL, *Circuit Judge*: After eighteen years as a doctor at a public hospital, appellant, an Indian Muslim, applied to replace his retiring supervisor. When the hospital denied appellant the position, he filed an administrative complaint alleging discrimination based on race, religion, and national origin. As he pursued his claim, his relationship with the hospital deteriorated—among other things, officials reported concerns about his performance and then promoted his assistant to supervise him. Appellant eventually took early retirement and filed suit in federal court, charging the hospital with discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964. Appellant's then-attorney, however, neglected to conduct any discovery. Finding that appellant failed to provide sufficient evidence to support his claims, the district court granted summary judgment to the hospital. We affirm.

**I.**

Appellant Mohammed Hussain joined the Veteran Affairs Medical Center in 1978 as Assistant Chief of Radiation Therapy. When his supervisor retired in 1997, Hussain became Acting Chief of Radiation Therapy, a position which, though requiring increased administrative responsibilities, came with no additional pay. Although Hussain expressed interest in becoming permanent Chief of the division, he remained Acting Chief for the next several years.

In September 2000, hospital officials merged Hussain's division with another division, the Imaging Service, creating one unified Radiology Service. Dr. Klemens Barth, Chief of Imaging, was then appointed to the new position of Chief of

Radiology Service. Hussain's title, duties, and compensation remained unchanged, but he now reported to Barth rather than directly to the hospital's Chief of Staff. Two months later, Hussain filed an Equal Employment Opportunity complaint alleging that the hospital failed to promote him to a permanent Chief position because of his race, religion, and national origin. Reiterating the same claims, he also filed a complaint with the Equal Employment Opportunity Commission (EEOC).

The following July, Barth hired an African-American woman, Dr. JoAnn Manning, as an additional staff physician in the Radiation Therapy division. Hussain asserts that although the hospital purported to hire Manning to assist Hussain, Barth excluded him from the hiring process and prevented him from supervising Manning.

Three months later, Hussain received a performance evaluation from the Chief of Staff, Ross Fletcher. Although Hussain's former supervisor had consistently given him excellent performance reviews, Fletcher rated Hussain as just "satisfactory," noting that "many issues have arisen regarding Dr. Hussain." In a later evaluation rating Hussain as "low satisfactory," Barth observed that Hussain failed to "provide . . . effective leadership for the division." *Hussain v. Principi*, 344 F. Supp. 2d 86, 92 (D.D.C. 2004). In December 2002, Barth appointed Manning as permanent Chief of Radiation Therapy and demoted Hussain to Assistant Chief, with Manning as his supervisor.

Shortly thereafter, Hussain filed suit in federal court, charging the hospital with various torts and Title VII violations. In their affidavits, Manning and Barth allege that around this time they began encountering problems with Hussain's performance, particularly his failure to conduct adequate follow-up patient care. In June 2003, they renewed Hussain's clinical

privileges for only three months, rather than the normal two-year period. They also informed Hussain that he would now have to document patient examinations and submit records for monthly review. At the end of July, Hussain informed the hospital that he would be taking "extended sick leave . . . until further notice." *Id.* at 93. When Hussain failed to provide medical documentation to support his absence, the hospital placed him on "Absence Without Leave" status. In September, Hussain took voluntary early retirement.

Hussain then amended his complaint (the second amended complaint) dropping several claims and retaining only those based on Title VII: failure to promote based on race, religion, and national origin; retaliation; hostile work environment; and constructive discharge. Although Hussain's then-attorney, Tony Shaw, took several depositions in connection with proceedings before the EEOC, he took no discovery at all during the six-month period allotted by the district court. After discovery closed, the hospital moved for summary judgment, at which point Hussain, represented by new counsel, Dawn Martin, moved to reopen discovery. The district court denied Hussain's motion and granted summary judgment to the hospital on all claims. *See id.* at 93-94, 107.

Hussain now appeals, arguing that the district court erred in (1) denying his motion to reopen discovery, (2) finding no genuine issue of material fact with regard to his employment discrimination and retaliation claims, and (3) finding that he failed to state hostile work environment or constructive discharge claims.

## II.

We begin with the discovery issue. In July 2004, after discovery closed, Hussain notified the district court that Martin had replaced Shaw as his attorney. Upon learning that Shaw had

failed to conduct any discovery during the allotted time frame, Martin moved to reopen discovery under Rule 16(b). *See* Fed. R. Civ. P. 16(b) (permitting courts to modify their schedules if the requesting party shows "good cause"). Critical to the issue before us, this request came over three months after discovery closed and several weeks after the hospital filed its motion for summary judgment. Martin argued that because the hospital had only just filed its answer to Hussain's second amended complaint, the district court had good cause to grant a 90-day extension for discovery: "A defendant should not be permitted to obtain repeated extensions from the Court to respond to a Complaint, such that it delays the plaintiff [an] Answer to his/her Complaint throughout the entire discovery period, and then denies the Plaintiff the right to discovery." Pl.'s Mot. to Reopen Disc. 2. Martin also argued that without an opportunity for additional discovery, Hussain would be unable to establish that hospital officials had acted with discriminatory intent.

At a hearing on the motion to reopen discovery—a hearing attended by both Shaw and Martin—Shaw acknowledged "some lack of diligence" on his part, Mot. Hr'g Tr. 4, July 22, 2004, but pointed out that the hospital also operated with "unclean hands" by repeatedly requesting extensions for its filings, *id*. at 6. The district court, observing that Hussain had a "great malpractice action" against Shaw, *id.*, stated: "You can't cite me a case . . . that says that I'm supposed to extend [discovery] because of your incompetence, can you? That is not good cause," *id*. at 8. The court also explained that although the hospital had asked for several extensions, it had always filed its motions in a timely manner. In its written ruling denying Hussain's motion, the court noted that since Hussain had taken several depositions during the administrative proceedings, he had not been "completely deprived of discovery." *Hussain*, 344 F. Supp. 2d at 93.

We review discovery rulings for abuse of discretion. *See Military Audit Project v. Casey*, 656 F.2d 724, 750 (D.C. Cir. 1981). We are especially reluctant to interfere with district court decisions regarding their own day-to-day operations. *See, e.g., United States v. Microsoft Corp.*, 253 F.3d 34, 100 (D.C. Cir. 2001) ("[A]n appellate court will not interfere with the trial court's exercise of its discretion to control its docket and dispatch its business . . . except upon the clearest showing that the procedures have resulted in actual and substantial prejudice to the complaining litigant.") (quoting *Eli Lilly & Co., Inc. v. Generix Drug Sales, Inc.*, 460 F.2d 1096, 1105 (5th Cir. 1972)). In particular, district courts have "broad discretion in structuring discovery." *Edmond v. U.S. Postal Serv. Gen. Counsel*, 949 F.2d 415, 425 (D.C. Cir. 1991); *see also In re Multi-Piece Rim Prods. Liab. Litig.*, 653 F.2d 671, 679 (D.C. Cir. 1981) ("A district court has broad discretion in its resolution of discovery problems that arise in cases pending before it."). Given this highly deferential standard, we see no basis for questioning the district court's denial of an enlargement of time for additional discovery.

Although Hussain now points to Rule 56(f) in support of his request to reopen discovery, *see* Fed. R. Civ. P. 56(f) (allowing courts to order additional discovery prior to ruling on a summary judgment motion), his district court motion relied solely on Rule 16(b). We will therefore consider only his arguments relating to Rule 16(b). *See District of Columbia v. Air Fla., Inc.*, 750 F.2d 1077, 1084 (D.C. Cir. 1984) ("It is well settled that issues and legal theories not asserted at the District Court level ordinarily will not be heard on appeal."). In that regard, Hussain argues that the district court's "no good cause" finding rests on three factual errors and thus amounts to an abuse of discretion.

First, Hussain asserts that the court erred in finding that he had an opportunity to obtain adequate discovery at the

administrative level, given that the hospital refused to comply with several administrative law judge (ALJ) orders to produce documents and witnesses for deposition, and that the ALJ took an indefinite leave of absence prior to completing the proceedings. The district court made no such error. Acknowledging that Hussain "may not have had a full administrative hearing," the court found only that he "did have an opportunity to obtain discovery at the administrative level regarding many of the same claims he pursues here." *Hussain*, 344 F. Supp. 2d at 93-94. This is accurate—Hussain took lengthy depositions of several key witnesses during the EEOC proceedings, including both Fletcher and Barth.

Hussain next claims that the district court incorrectly believed that the hospital filed all its motions on time, when in fact both its summary judgment motion and its answer to the second amended complaint were late. But even if this is true, we see no reason to think the court would have held differently had it realized these filings were untimely. The court explained that "[b]ecause . . . there was *no* legitimate reason why discovery had not yet been conducted, [it] had ample reason to reject plaintiff's motion." *Id.* at 93. Accordingly, the alleged error—if error at all—was harmless. *See, e.g.*, *Barth v. Gelb*, 2 F.3d 1180, 1188-89 (D.C. Cir. 1993) (explaining that errors which have no effect on the outcome of a case are not grounds for reversal or remand).

Finally, Hussain argues that the district court's refusal to reopen discovery represents an overly harsh penalty for Shaw's negligence, given that the lawyer's "future misconduct was . . . more than sufficiently deterred" when his client fired him and the judge then "berated [him] in open court." Appellant's Br. 54. Hussain misunderstands the district court's holding. The court denied Hussain's motion not because it determined that Shaw deserved punishment, but because Hussain failed to establish

good cause for modifying the discovery schedule. *See Hussain*, 344 F. Supp. 2d at 93-94.

We sympathize with Hussain, the victim of Shaw's negligence, and with Martin, who has tried hard to salvage her client's case. But as the Supreme Court has held, a party who voluntarily chooses his attorney "cannot . . . avoid the consequences of the acts or omissions of this freely selected agent." *Link v. Wabash R.R. Co.*, 370 U.S. 626, 633-34 (1962). Accordingly, because the primary reason for reopening discovery would have been to mitigate the damage Shaw inflicted on Hussain's case, the district court did not abuse its discretion in denying Hussain's motion.

## III.

We turn to Hussain's discrimination and retaliation claims. We review de novo the district court's order granting summary judgment to the hospital, viewing the evidence in the light most favorable to Hussain. *See Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994).

Hussain's first claim is that the hospital unlawfully discriminated against him when it created the new Radiology Service and named Barth as its Chief. Because Hussain alleges discrimination via disparate treatment, the *McDonnell Douglas* three-step "shifting burdens" test applies. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). We have described the *McDonnell Douglas* framework as follows:

> [T]he complainant must first establish a *prima facie* case of prohibited discrimination. Once he has done so, the burden then shifts to the employer to articulate legitimate, nondiscriminatory reasons for the challenged employment decision. Should the employer succeed in presenting such reasons, the burden shifts back to the

complainant, who then has an opportunity to discredit the employer's explanation. . . . [T]he plaintiff at all times retains the ultimate burden of persuasion.

*Aka v. Wash. Hosp. Ctr.*, 156 F.3d 1284, 1288-89 (D.C. Cir. 1998) (en banc) (internal citations omitted). The district court found that although Hussain established a prima facie case, he failed to rebut the legitimate reason offered by the hospital for putting Barth in the new Chief position, i.e., that Barth was better qualified than Hussain.

Hussain contends that the district court erroneously discounted evidence of his own qualifications, including his special skill in implementing brachytherapy, his involvement in charitable work and professional committees, and his faculty position at Georgetown University. He also points to various documents which contradict the hospital's claim that he failed to hire necessary staff, correct personnel problems, and request important equipment. But even viewed in the light most favorable to Hussain, this evidence merely shows that Hussain was a better candidate than the hospital admits, not that he was more qualified than Barth. Under *Aka*, comparing qualifications is insufficient to establish discriminatory intent unless the plaintiff is "significantly better qualified" than the person who obtained the position. 156 F.3d at 1294. Given Barth's numerous publications, several university affiliations, and success in running the significantly larger Imaging Service, we agree with the district court that Hussain failed to discredit the hospital officials' claim that they believed Barth to be better suited for the promotion. Hussain argues that the district court failed to consider whether evidence of "religious alliances and animosity" revealed hospital officials' discriminatory intent, Appellant's Br. 41, but the district court correctly found that Hussain's evidence of religious animus consisted merely of conclusory allegations in his own affidavit. *See Dist. Intown*

*Props. Ltd. P'ship v. District of Columbia*, 198 F.3d 874, 878 (D.C. Cir. 1999) ("In deciding whether there is a genuine issue of material fact, the court must assume the truth of all statements proffered by the non-movant *except for* conclusory allegations lacking any factual basis in the record." (emphasis added)). Accordingly, the district court properly granted summary judgment to the hospital on this claim.

Hussain next claims that hospital officials discriminated against him when they declined to appoint him permanent Chief of Radiation Therapy and instead promoted Manning to the position. Following *McDonnell Douglas*, the district court again found that Hussain failed to rebut the hospital officials' claim that they gave the job to the most qualified candidate. Although Hussain had worked at the hospital much longer than Manning, Manning had fifteen years of radiation therapy experience, numerous publications, and an affiliation with Georgetown Hospital. Given this evidence, we agree with the district court that because Hussain failed to demonstrate pretext, summary judgment on this claim was proper.

For his third claim, Hussain argues that the hospital unlawfully retaliated against him for pursuing his discrimination complaint. In particular, he cites twelve alleged acts of retaliation: (1) Manning's appointment as permanent Chief of Radiation Therapy, (2) a report to the hospital's Peer Review Panel regarding Hussain's possible involvement in a malpractice suit, (3) denial of special pay, (4) denial of clinical privileges, (5) heightened monitoring by supervisors, (6) poor performance evaluations, (7) denial of medical leave, (8) delay in forwarding retirement application forms, (9) denial of counsel during a discussion about retirement and failure to provide a written copy of retirement options, (10) denial of access to his personnel file, (11) termination threats, and (12) failure to address insubordination by other employees.

Under *Brown v. Brody*, 199 F.3d 446, 452 (D.C. Cir. 1999), plaintiffs alleging retaliation must demonstrate that (1) they engaged in statutorily protected activity, (2) the employer took an adverse employment action against them, and (3) a causal connection existed between the two. The district court found that although Hussain's discrimination complaint satisfied the first requirement, each of his twelve claims failed either because the alleged act fell short of an actionable adverse action or because Hussain provided insufficient evidence of a causal connection. The court then dismissed Hussain's hostile work environment and constructive discharge claims, explaining that Hussain failed to show that "any allegedly disparaging conduct by the defendant was based on plaintiff's race, religion, or national origin." *Hussain*, 344 F. Supp. 2d at 107.

Rather than responding to these findings directly, Hussain argues that the district court overlooked his claim that the twelve alleged retaliatory acts, when combined, created a hostile work environment and constituted constructive discharge. "Retaliation," Hussain argues, "may take the form [of] one or more separate, discreet acts, or may be so frequent, severe, pervasive and harassing, that, together, the individual acts create a retaliatory hostile work environment under Title VII." Appellant's Br. 42.

As a matter of law, Hussain makes an excellent point. In this circuit, a hostile work environment can amount to retaliation under Title VII. *See Singletary v. District of Columbia*, 351 F.3d 519, 526 (D.C. Cir. 2003). To prevail on such a claim, however, Hussain must show that the hospital subjected him to "discriminatory intimidation, ridicule, and insult" of such "sever[ity] or pervasive[ness] [as] to alter the conditions of [his] employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21-22 (1993) (quoting

*Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 64 (1986)). But Hussain has failed to make such a showing. As the district court explained, Hussain exaggerates several of his claims: The record clearly shows that the hospital never reported him for malpractice, revoked his clinical privileges, or denied him special pay or medical leave. *See Hussain*, 344 F. Supp. 2d at 104 n.25. Although the work environment described by Hussain was hardly ideal, we think no reasonable jury could find it "abusive" under the standard set forth in *Harris*. *Cf. Singletary*, 351 F.3d at 528-29 (declining to grant summary judgment against an employee claiming hostile work environment where, for over a year and a half, the employee was forced to work in a poorly lit, unheated, and unventilated storage room full of brooms and boxes of debris). Nor do we believe that a reasonable jury could find in Hussain's favor with regard to his constructive discharge claim: Even when considered collectively, his allegations fail to establish a "working environment . . . so intolerable that [his] resignation qualified as a fitting response." *Pa. State Police v. Suders*, 542 U.S. 129, 134 (2004).

## IV.

Concluding that the district court neither abused its discretion in refusing to reopen discovery nor erred in finding that Hussain failed to present any triable Title VII claims, we affirm the grant of summary judgment to the hospital on all counts.

*So ordered*.

ROGERS, J., *concurring*:  As the court observes, our review of discovery rulings for abuse of discretion reflects a "reluctan[ce] to interfere with district court decisions regarding their own day-to-day operations."  Op. at 6.  However, the court's reluctance is tempered where there is "the clearest showing that the procedures have resulted in actual and substantial prejudice to the complaining litigant."  *Id.* (quoting *United States v. Microsoft Corp.*, 253 F.3d 34, 100 (D.C. Cir. 2001)).  In my view, our conclusion that the district court did not abuse its discretion in denying Hussain's motion to reopen discovery follows from a slightly different analysis than is adopted by the court of Hussain's contention that the refusal to grant his motion was an overly harsh penalty for his attorney's negligence.  *See* Op. at 7-8.

Federal Rule of Civil Procedure 16(b) provides that a scheduling order "shall not be modified except upon a showing of good cause . . . ."  The advisory committee notes on the Rule explain that there is good cause "if [the schedule] cannot reasonably be met despite the diligence of the party seeking the extension."  FED. R. CIV. P. 16(b) advisory committee's notes (1983 amendments).  Several circuit courts of appeal have held that "Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the [modification]. . . .  If that party was not diligent, the inquiry should end."  *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992); *see also O'Connell v. Hyatt Hotels of Puerto Rico*, 357 F.3d 152, 155 (1st Cir. 2004); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 625 (6th Cir. 2002); *Bradford v. DANA Corp., Inc.*, 249 F.3d 807, 809 (8th Cir. 2001); *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000).  Some courts secondarily consider the "possible prejudice to the party opposing the modification."  *Inge*, 281 F.3d at 625; *see also Reliance Ins. Co. v. Louisiana Land & Exploration*, 110 F.3d 253, 257 (5th Cir. 1997).

Under those precedents, the primary consideration in determining whether the district court abused its discretion by refusing to reopen discovery is whether Dr. Hussain was diligent in conducting discovery within the schedule set by the district court. Hussain's attorney conducted no discovery within that period, and his motion to reopen discovery came three and a half months after the discovery period had ended. The only asserted reason for this lack of diligence was attorney neglect. Yet "carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief." *Johnson*, 975 F.2d at 609.

The question remains whether Hussain can be deemed diligent in complying with the scheduling order although his attorney was not. The general rule is that a client is held accountable for his attorney's conduct. *See, e.g., Link v. Wabash R.R. Co.*, 370 U.S. 626, 633-34 (1962); *Camps v. C & P Tel. Co.*, 692 F.2d 120, 123-24 (D.C. Cir. 1981). The First Circuit has confronted two cases under Rule 16(b) in which parties blamed their lack of diligence on attorney error, and in both cases the court replied, "Attorneys represent clients, and, as a general rule, an attorney's blunder binds her client." *O'Connell*, 357 F.3d at 155; *Rosario-Diaz v. Gonzalez*, 140 F.3d 312, 315 (1st Cir. 1998). Were this court to follow the interpretation of Rule 16(b) adopted by other circuits and hold Hussain accountable for his counsel's behavior, "the inquiry should end" because Hussain "was not diligent." *Johnson*, 975 F.2d at 609.

This court, however, has not viewed the attorney-blunder rule to be without exception. The court has recognized in the context of the dismissal of a complaint that a party should not bear the consequences of attorney misdeeds when the lawyer "misled the client by reassuring him that the litigation was continuing smoothly when in fact it was suffering severely from lack of attention." *Jackson v. Washington Monthly Co.*, 569

F.2d 119, 122 (D.C. Cir. 1977). And on appeal, as noted, the court will determine whether there is "the clearest showing [of] actual and substantial prejudice." *Microsoft*, 253 F.3d at 100. Although Hussain does not assert that he was misled by his attorney as in *Jackson*, he did argue to the district court that he was being unfairly punished for his former attorney's negligence by being forced to oppose the hospital's motion for summary judgment without discovery. In my view, the district court's evaluation of the nature of the discovery that Hussain obtained during the EEOC proceedings precludes a finding that Hussain has made the clear showing of "actual and substantial prejudice" required for the court to conclude that the district court abused its discretion in denying his motion to reopen discovery. Thus, were this court to interpret "good cause" under Rule 16 to embrace consideration of prejudice, Hussain's contention that the lack of evidence with which to respond to the hospital's motion constituted good cause to reopen discovery would fail.

The district court expressly addressed whether Hussain would be unfairly prejudiced in his ability to oppose summary judgment if he were not permitted to reopen discovery. *See Hussain v. Principi*, 344 F. Supp. 2d 86, 93-94 (D.D.C. 2004) . In denying Hussain's motion to reopen discovery, the district court relied partially on the ground that he was not "completely deprived of discovery" because his attorney had taken "lengthy depositions" of Dr. Barth, Dr. Fletcher and Mr. Garfunkel during the EEOC proceedings. *Id.* The district court noted that "[t]hese depositions covered the merger of the Radiation Therapy and Imaging Services, Dr. Barth's appointment as Chief of Radiology, the Peer Review Panel, the hiring of Dr. Manning, the administration's reaction to [Hussain's] EEO complaints, and many other topics." *Id.* at 94. The district court thus found that Hussain "did have an opportunity to obtain discovery at the administrative level regarding many of the same claims he pursues here." *Id.* at 93-94.

Because a litigant seeking discovery may be unable to identify the nature of the information sought, it would be inappropriate to place such a burden on the moving party. But Hussain is in a somewhat different position as a result of the administrative discovery he had obtained. In the district court, Hussain suggested a number of inquiries he would pursue were discovery reopened, for the most part involving new lines of questioning with the individuals he had previously deposed, but also involving his desire to depose Dr. Manning and Dr. Patel, both of whom he was unable to depose in the administrative proceeding. Assuming further depositions could reveal helpful information, Hussain nonetheless fails, in light of the evidence he could rely upon in opposing the hospital's motion for summary judgment, to make "the clearest showing [of] actual and substantial prejudice." *Microsoft*, 253 F.3d at 100. He could rely upon the depositions of Dr. Barth, Dr. Fletcher, and Mr. Garfunkel; the EEO investigative file; his own deposition and affidavit; the 109 exhibits from his personal files; and any affidavits he could collect from current and former hospital employees. Deposing Drs. Manning and Patel would appear to be of questionable worth as neither was a central figure in Hussain's discrimination or retaliation claims; he sought their depositions only to show that Dr. Manning's view of his poor performance was inspired by her self-interest and that Dr. Patel's view of his poor performance was inspired by anti-Muslim bias.

Accordingly, I concur.