**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

```
_____
                              )
GILBERT M. GRAHAM,            )
                              )
        Plaintiff,            )
                              )
        v.                    ) Civil Action No. 03-1951 (RWR/DAR)
                              )
ERIC H. HOLDER, JR., et al.,  )
                              )
        Defendants.           )
_____)
```

**MEMORANDUM OPINION**

Pro se Plaintiff Gilbert Graham, a 58-year-old African-American retired Special Agent for the Federal Bureau of Investigation ("FBI"), filed this action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq., against the Attorney General and other federal officers and agencies, alleging that his former federal employer subjected him to a hostile work environment in retaliation for his participation in protected activities. Defendants move for summary judgment. Because Graham neither establishes that the defendants subjected him to a retaliatory hostile work environment nor rebuts as pretextual the defendants' neutral reasons for their challenged actions, the defendants' motion for summary judgment will be granted and Graham's cross-motion for summary judgment will be denied at moot.

BACKGROUND

Graham worked as a Special Agent for the FBI in its Washington Field Office ("WFO") for 25 years. Graham alleges that the defendants subjected him to a hostile work environment because of his participation in protected activities. (Pl.'s Am. Compl. ("Am. Compl.") ¶ 1.) Graham filed against the FBI an EEO complaint in 1985 and a civil action under Title VII in 1992, and he actively participated in a class action against the FBI that was filed in 1993. (Id. at ¶¶ 24, 92; Pl.'s Stmt. of Mat. Facts ("Pl.'s Stmt.") ¶¶ 20, 25-26.) In November 2000, Graham filed an EEO complaint about a 1999 investigation by the Intelligence Oversight Board ("IOB"). (Pl.'s Stmt. ¶ 29.) In March 2002, the defendants notified Graham that he would be suspended for three days without pay as a result of the IOB investigation findings. (Am. Compl. ¶ 66; Defs.' Mem. in Supp. of Mot. for Summ. J. ("Def.'s Mem.") at 2-3.) Graham later filed a second EEO complaint alleging discrimination based on race, age, and retaliation, and he appealed his proposed punishment. (Am. Compl. ¶¶ 12, 67; Pl.'s Stmt. ¶ 30.) In addition, Graham complained to the Justice Department's Office of the Inspector General about what he viewed as mismanagement and abuse of authority reflected in his workload assignment, the conduct of the IOB investigation, and reported unauthorized use of electronic surveillance relating to a public corruption

investigation. (Am. Compl. ¶ 72; Pl.'s Stmt. ¶ 31.) Graham's proposed three-day suspension was eventually reduced to a letter of censure. (Am. Compl. ¶ 69.)

In June 2002, Graham filed a civil action in this court regarding the agency's handling of the IOB investigation and decision to censure him. See Graham v. Gonzales, Civil Action No. 03-1951 (RWR), 2005 WL 3276180, at *4 (D.D.C. September 30, 2005). In August 2002, Graham asked to take a "reasonable" amount of administrative leave to address matters related to his 2002 EEO complaint. (Am. Compl. ¶ 71; Defs.' Stmt. of Mat. Facts ("Def.'s Stmt.") ¶ 8.) Graham's supervisor sought guidance from the Assistant Special Agent in Charge ("ASAC") about whether to approve the request and sign Graham's time and attendance register, because Graham's supervisor believed that his oversight could be a conflict of interest. (Defs.' Stmt. ¶ 9; Defs.' Mem. Ex. 1 ("Fogle Decl.") ¶¶ 5-6.) The ASAC contacted the Office of EEO Affairs to ask how to proceed with Graham's request to take administrative leave. The Office of EEO Affairs informed the ASAC that it did not authorize requests for administrative leave, and that Graham's request should be forwarded to the Employment Law Unit. (Defs.' Stmt. ¶ 12; Defs.' Mem. Ex. 3 ("Trent Decl.") ¶¶ 4-7.) Approximately three weeks after Graham made his request for administrative leave, his request was approved by a different ASAC. (See Defs.' Mem. Ex. 4 ("Bolcar Decl.") ¶¶ 4-6.) Graham

alleges that his request was never acted upon, and that his request subjected him to "unwarranted administrative scrutiny." (Am. Compl. ¶ 71.)

In November 2002, Graham filed another EEO complaint, alleging mental harassment and retaliatory hostile working environment. (Pl.'s Stmt. ¶ 33.) Shortly thereafter, Graham's 2002 civil action was dismissed with prejudice, because the claims he raised were not viable. See Graham v. Ashcroft, Civil Action No. 02-1231 (ESH), 2002 WL 32511002, at *5-6 (D.D.C. November 20, 2002).

In January 2003, the defendants transferred Graham to another squad and assigned to him a bureau vehicle that Graham claims had "an inoperable door locking mechanism, an inoperable heating and air conditioning system, a dead battery, very high mileage and delinquent parking tickets." (Am. Compl. ¶ 71; Pl.'s Stmt. ¶ 96.) According to Graham, in February 2003, the defendants advised him that he could not use previously unclassified letters in appealing the dismissal of his 2002 federal action, and threatened to prosecute him if he disclosed any classified information. (Am. Compl. ¶ 71; Pl.'s Stmt. ¶ 98.) In response, Graham asked the Justice Department's Office of Professional Responsibility ("OPR") to investigate whether the threats were made to impede an official proceeding. (Am. Compl. ¶ 74.) In July 2003, Graham met with OPR staff to review his

allegations and other complaints - - a meeting which, according to him, "quickly turned into a hostile interrogation and threats of administrative action [that could be] taken against the plaintiff." (Id. ¶ 76.) In September 2003, Graham retired from the FBI and filed this action in which he alleges that he was subjected to a retaliatory hostile work environment when the defendants failed to authorize his request for reasonable administrative leave to address matters related to his EEO complaint, subjected him to strict scrutiny in response to his request for administrative leave, transferred him to another squad and assigned him a mechanically deficient vehicle, advised him that he could not use certain classified information in his pending litigation, and threatened him with criminal prosecution for any unauthorized disclosure of classified information. (Id. ¶¶ 27, 71; Defs.' Stmt. ¶ 2.)[1]

The defendants now move for summary judgment under Federal Rule of Civil Procedure 56, arguing that the five bases for Graham's assertion of a retaliatory hostile work environment could not as a matter of law constitute a hostile work environment:

> (a) [Graham] was not afforded "reasonable leave" to
> work on his EEO complaint; (b) his request for leave
> was subjected to scrutiny; (c) his reputation was
> tarnished when he was given a mechanically deficient

---

[1] Graham also alleged six other claims which were dismissed earlier. See Graham v. Gonzalez, 2005 WL 3276180, at *7.

FBI car; (d) he was told by FBI counsel that he could not publish a document that contained classified information . . . ; and (e) he was threatened that he could be prosecuted if he published the classified document.

(Defs.' Mem. at 7; see Am. Compl. ¶ 71.)  See also Graham v. Mukasey, 608 F. Supp. 2d 50, 51 (D.D.C. 2009).  Graham filed a cross-motion for summary judgment, but did not file an opposition to the defendants' motion for summary judgment.

## DISCUSSION

"Summary judgment may be granted only where there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law."  Moore v. Hartman, 571 F.3d 62, 66 (D.C. Cir. 2009) (citing Fed. R. Civ. P. 56 (c) and Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986)). A genuine issue of fact exists where the evidence is "such that a reasonable jury could return a verdict for the nonmoving party," after "resolving ambiguities and drawing all factual inferences in favor of the nonmoving party."  Moore, 571 F.3d at 66 (quoting Anderson, 477 U.S. at 255).  "The nonmoving party cannot defeat summary judgment by 'simply show[ing] that there is some metaphysical doubt as to the material facts.'"  Moore, 571 F.3d at 66 (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  "Not all alleged factual disputes represent genuine issues of material fact which may only be resolved by a jury.  Material facts are those that might affect

the outcome of the suit under governing law[.]" Nails v. England, 311 F. Supp. 2d 116, 121 (D.D.C. 2004) (internal quotations omitted).

"In deciding whether there is a genuine issue of material fact, the court must assume the truth of all statements proffered by the non-movant except for conclusory allegations lacking any factual basis in the record." Hussain v. Nicholson, 435 F.3d 359, 365 (D.C. Cir. 2006) (quoting Dist. Intown Prop. L.P. v. Dist. of Columbia, 198 F.3d 874, 878 (D.C. Cir. 1999)). To successfully oppose a motion for summary judgment under Rule 56(c), a non-moving party must present sufficient admissible evidence for a reasonable trier of fact to find for the nonmoving party. Juergens v. Urban Title Servs., 533 F. Supp. 2d 64, 73 (D.D.C. 2008) (citing Laningham v. U.S. Navy, 813 F.2d 1236, 1242-43 (D.C. Cir. 1987)). Briefs containing mere allegations or merely denying the movant's pleading are not enough to prevent summary judgment; instead, a non-movant must go beyond the pleadings to proffer specific facts rebutting the movant's assertions. See Greer v. Paulson, 505 F.3d 1306, 1315 (D.C. Cir. 2007); Burke v. Gould, 286 F.3d 513, 517-18 (D.C. Cir. 2002). "Although the burden on the nonmoving party is not great, it is still required to show specific facts, as opposed to general allegations, that present a genuine issue worthy of trial."

Palestine Info. Office v. Shultz, 853 F.2d 932, 944 (D.C. Cir. 1988).

To establish a successful claim of retaliation, a plaintiff must initially show "that (1) he engaged in a statutorily protected activity, (2) a reasonable employee would have found the challenged action materially adverse, and (3) there existed a causal connection between the protected activity and the materially adverse action." Baloch v. Norton, 517 F. Supp. 2d 345, 353-54 (D.D.C. 2007) (citing Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 58 (2006)). "Statutorily protected activities include the filing of EEOC complaints and the initiation of litigation to vindicate claims of employment discrimination or retaliation." Baloch, 517 F. Supp. 2d at 354 (citing Forkkio v. Powell, 306 F.3d 1127, 1131-32 (D.C. Cir. 2002)).

In this circuit, a hostile work environment can amount to retaliation under Title VII. Hussain, 435 F.3d at 366. To prevail on a claim that a hostile work environment amounts to retaliation under Title VII, a plaintiff must show that he was subjected to "'discriminatory intimidation, ridicule and insult' of such 'sever[ity] or pervasive[ness] [as] to alter the conditions of . . . employment and create an abusive working environment.'" Id. at 366; Harris v. Forklift Sys., Inc., 510 U.S. 17, 21-22 (1993) (citing Meritor Sav. Bank, FSB v. Vinson,

477 U.S. 57, 64 (1986)).  To determine whether a hostile work environment exists, the court looks to the totality of the circumstances, including the frequency of the discriminatory conduct, its severity, its offensiveness, and whether it interferes with an employee's work performance.  Faragher v. City of Boca Raton, 524 U.S. 775, 787-88 (1998).  Ultimately, "[s]o long as the environment would reasonably be perceived, and is perceived, as hostile or abusive," it is actionable.  Harris, 510 U.S. at 22.  A hostile work environment claim is not a cause of action for the "ordinary tribulations of the workplace." Franklin v. Potter, 600 F. Supp. 2d 38, 76-78 (quoting Faragher, 524 U.S. at 788).  Not all things that make an employee unhappy create a hostile work environment.  Broderick, 437 F.3d at 1233. "A mere delay [in granting an employee's leave request] does not constitute an adverse personnel action."  Cromwell w. Wash. Metro. Area Transit Auth., No. 97-2257 (RMC), 2006 WL 2568009, at * 6 (D.D.C. Sept. 5, 2006) (concluding that the plaintiff's claim that her employer delayed/denied her leave request did not support a reasonable inference of discrimination) (citing Taylor v. Small, 350 F.3d 1286, 1293 (D.C. Cir. 2003) (concluding that a delay in receiving employee performance evaluations did not constitute an adverse action because it did not affect plaintiff's grade or salary)).  Even objectionable behavior that is "motivated by discriminatory animus" might not be actionable.

Barbour v. Browner, 181 F.3d 1342, 1347-48 (D.C. Cir. 1999). The conduct complained of "must be extreme to amount to a change in the terms and conditions of employment." Franklin, 600 F. Supp. 2d at 77 (quoting Faragher, 524 U.S. at 788).

In addition, to sustain a hostile work environment claim based on retaliation, the plaintiff must produce evidence that establishes a causal connection between the harassment and his protected activity. See Na'im v. Clinton, Civil Action No. 06-2237 (RMU), 2009 WL 174364, at * 11 (D.D.C. June 19, 2009); Nichols v. Truscott, 424 F. Supp. 2d 124, 141 (D.D.C. 2006). The causal connection may be established by showing that the employer had knowledge of the employee's protected activity, and that the events that created a hostile environment action took place shortly after that activity. Holmes-Martin v. Leavitt, 569 F. Supp. 2d 184, 203 (D.D.C. 2008); see also Cones v. Shalala, 199 F.3d 512, 521 (D.C. Cir. 2000) (citing Mitchell v. Baldrige, 759 F.2d 80, 86 (D.C. Cir. 1985). In order to qualify as related, the temporal proximity of the harassment and protected activity must be substantially close. See Willingham v. Gonzales, 391 F. Supp. 2d 52, 61-62 (D.D.C. 2005) (concluding that a six-month lapse between the retaliatory action and the protected activity is insufficient to support a finding of causation on the basis of temporal proximity); Buggs v. Powell, 293 F. Supp. 2d 135, 148 (D.D.C. 2003) (holding that the time

lapse must be less than three months to establish a causal connection).

Graham alleges that the defendants prohibited him from using reasonable administrative leave to address matters related to his EEO complaint and used his leave request to scrutinize his records. (Am. Compl. ¶ 93.) However, the defendants provided declarations from Graham's immediate supervisor and the ASAC demonstrating no actionable misconduct in the defendants' reaction to Graham's request to take reasonable administrative leave. (See Defs.' Stmt. ¶¶ 7-13; Fogle Decl. ¶ 3; Trent Decl. ¶ 6.) While the defendants acknowledge that Graham's time request was not immediately authorized, Graham does not offer any evidence to permit a reasonable inference that the defendants' brief inaction regarding his request constituted the type of incident that can contribute to a hostile work environment. Graham sent his request for administrative leave to his immediate supervisor, who was also the subject of Graham's EEO complaint which he was requesting leave to address. The supervisor involved the ASAC to avoid a possible conflict of interest, hardly an improper choice. Although the complaint alleged that his leave request was never authorized, another ASAC eventually did approve Graham's request. (See Bolcar Decl. ¶¶ 4-6.) Further, Graham requested that another agent handle his leave request before the initial ASAC made her final

determination of how much leave time was reasonable, meaning that some period of delay was partially occasioned by Graham. (See Defs.' Stmt. ¶ 8-13.)

Graham's evidence is insufficient to raise a reasonable inference that the defendants' delay in granting his time request was pretext for retaliation or discrimination. The defendants' delay in responding to Graham's leave request does not constitute action sufficiently severe or pervasive to alter the conditions of his employment and create an abusive working environment. Furthermore, Graham has failed to rebut the defendants' non-discriminatory reason for their actions in response to his leave request. As such, Graham's claim that the defendants retaliated against him by causing a hostile work environment in response to his leave request fails. Nor does Graham's assertion that his time and attendance slips were more thoroughly investigated make out a retaliatory hostile work environment claim. Generally, an assertion that an employer excessively reviewed an employee's performance "'does not satisfy the requirement that plaintiff show a pervasive, severe and discriminatory hostile work environment.'" Asghar v. Paulson, 580 F. Supp. 2d 30, 39 (D.D.C. 2008) (quoting Childs-Pierce v. Util. Workers Union of Am., 383 F. Supp. 2d 60, 79 (D.D.C. 2005)). Being subjected to "scrupulous monitoring" does not support a claim for hostile work environment because

"it is part of the employer's job to ensure that employees are safely and properly carrying out their jobs." Runkle v. Gonzales, 391 F. Supp. 2d 210, 226 (D.D.C. 2005) (quoting Hussain v. Prinicipi, 344 F. Supp. 2d 86, 104-05 (D.D.C. 2004).

Similarly, the defendants produced evidence establishing a legitimate, nondiscriminatory reason for assigning Graham the vehicle about which he complained.  A declaration from Graham's immediate supervisor stated that Graham was given a different vehicle once he got scheduled to transfer to a different squad because the supervisor needed to maintain the low mileage vehicles for agents who remained on the squad and were continuing to "work the target."  (Defs.' Stmt. ¶¶ 14-17; Defs.' Mem. Ex. 2 ("Georgacopoulos Decl.") ¶ 2.)  Georgacopoulos also explained that the outstanding parking tickets that were issued to the vehicle were incurred when the vehicle was assigned to another agent who had left the squad, and the defendants decided to pay the citations to prevent Graham's possible loss of the use of the vehicle during the time needed to investigate the tickets.  (Georgacopoulos Decl. ¶¶ 4-5.)  The defendants also provided a work order to show that a new battery and a new thermostat were placed in Graham's assigned vehicle one week after Graham reported the problems.  (Defs. Stmt. ¶ 15; Defs.' Mem. Ex. 5.)  In addition, the defendants provided work orders to show that on three other occasions when Graham complained of

problems with the vehicle, they were repaired on the same day. (Defs.' Mem. Ex. 5, at 2-4.)

Graham has failed to produce any contradictory evidence. Instead, he merely asserts that "more suitable vehicles were available," citing nothing more than his complaint as evidence for that assertion. (Pl.'s Stmt. ¶ 96.) Because Graham has failed to offer any contradictory evidence to rebut the defendants' neutral reason for Graham's vehicle assignment, this basis will not support Graham's claim of retaliatory hostile work environment.

Finally, Graham alleges that the defendants threatened him with criminal prosecution in the event of any unauthorized disclosure or if he used classified documents in his pending litigation. (Am. Compl. ¶ 93.) In support of their summary judgment motion, the defendants produced a declaration from an FBI Supervisory Special Agent establishing that Graham was merely advised that he could not disclose classified information in his pending litigation and was required to use redacted versions of classified documents, which the defendants provided for him. (Defs.' Stmt. ¶ 21-22; Defs.' Mem. Ex. 7 ¶¶ 5-7.) Even crediting Graham's allegation that he felt threatened by the defendants' words of caution, Graham provides no evidence from which a reasonable jury could conclude that the defendants' warning him about the results of publishing classified

information created a hostile working environment.  See Rattigan
v. Gonzales, 503 F. Supp. 2d 56, 63, 79 (D.D.C. 2007)
(concluding that a supervisor's threat - - "If I catch you doing
something . . . I promise you I'll cut your balls off" - - was
not enough to satisfy a hostile working environment standard).
Further, a defendant's refutation of the assertion that
individual incidents constituted retaliation can, "even if only
implicitly, refute the umbrella charge that the acts
collectively constitute" retaliatory hostile work environment.
See Baloch, 517 F. Supp. 2d at 362 (citing Walker v. Johnson,
501 F. Supp. 2d 156, 162 (D.D.C. 2007)).

    Further, even if Graham has shown that his working
conditions were not ideal, Graham has failed to indicate how
these incidents constituted a pervasive pattern of abuse.  They
were infrequent and discrete, and for the most part, barely
severe or intimidating.  Moreover, Graham has not shown that the
incidents he has cited constitute the extreme conduct that is
usually required to form the basis of a hostile work environment
claim, or that the incidents unreasonably interfered with the
conditions of his employment.  See Faragher, 524 U.S. at 787-
88); Holbrook v. Reno, 196 F.3d 255, 262-63 (affirming summary
judgment because the employee failed to offer a fact-specific
showing of how alleged hostile act altered the conditions of her
work); Hussain, 435 F.3d at 366-67 (holding that although the

plaintiff's work environment "was hardly ideal," no reasonable jury could conclude that the actions complained of, which included denying him promotion, denying him medical leave, rendering poor performance evaluations and stating threats of termination, constituted an abusive working environment).

<u>CONCLUSION</u>

Because plaintiff has failed to establish any genuine issues of material fact regarding his retaliatory hostile work environment claim and has failed to rebut defendants' neutral reasons for their actions, the defendants' motion summary judgment will be granted and plaintiff's cross-motion for summary judgment will be denied as moot. A final, appealable order accompanies this Memorandum Opinion.

SIGNED this 29th day of September, 2009.


_____/s/_____
RICHARD W. ROBERTS
United States District Judge