# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued November 16, 2007     Decided December 14, 2007

No. 06-5402

VERLA M. WILEY,
APPELLANT

v.

JAMES K. GLASSMAN,
CHAIRMAN OF THE BROADCASTING BOARD OF GOVERNORS,
APPELLEE

---

Appeal from the United States District Court
for the District of Columbia
(No. 99cv00975)

---

*Leslie D. Alderman, III* argued the cause and filed the briefs for appellant.

*Diane M. Sullivan*, Assistant U.S. Attorney, argued the cause for appellee. With her on the brief were *Jeffrey A. Taylor*, U.S. Attorney, and *Michael J. Ryan*, Assistant U.S. Attorney. *R. Craig Lawrence*, Assistant U.S. Attorney, entered an appearance.

Before: BROWN and GRIFFITH, *Circuit Judges*, and EDWARDS, *Senior Circuit Judge*.

Opinion for the Court filed *Per Curiam*.

*Per Curiam*:  Appellant Verla Wiley, an African-American woman, worked at the United States Information Agency ("USIA") from 1966 until her retirement in May 2005.  In October 1999, USIA was abolished and certain sections reconstituted as the Broadcasting Board of Governors ("BBG"). *See* 22 U.S.C. §§ 6531-6553.  (For the remainder of this opinion, appellee will be referred to as "BBG.")

During the time periods that are relevant to issues in this appeal, appellant worked as an International Radio Broadcaster in the English-to-Africa Branch of the Africa Division at Voice of America, formerly a division of USIA.  In April 1999, Ms. Wiley and two other plaintiffs filed a lawsuit in District Court against USIA, alleging violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e *et seq*. The plaintiffs claimed that they had been discriminated against on the basis of their race and/or sex, subjected to a hostile work environment, and retaliated against for engaging in activities that were protected by Title VII.  As of 2004, Ms. Wiley was the only remaining plaintiff in the litigation before the District Court.

––––––––––––––––––

The facts of this case have been described at length by the District Court, *see Kemi Southey-Cole v. Kenneth Y. Tomlinson*, Civ. A. No. 99-00975 (D.D.C. Oct. 2, 2006) (mem. op.); *Kemi Southey-Cole v. Kenneth Y. Tomlinson*, Civ. A. No. 99-00975 (D.D.C. May 6, 2005) (District Court judge's order adopting magistrate judge's report and recommendation in full); *Kemi Southey-Cole v. Marc B. Nathanson*, Civ. A. No. 99-00975 (D.D.C. May 26, 2004) (magistrate judge's report and recommendation), so appellant's allegations need not be recounted in detail here.  On May 6, 2005, the District Court granted appellee's motion to strike Ms. Wiley's retaliatory

harassment claim, as well as her claim of retaliation based on a reduction in the amount of airtime that she was responsible for producing. Striking appellant's claims effectively dismissed them, and we treat the District Court's decision with respect to these two claims as if it had granted a motion pursuant to Federal Rule of Civil Procedure 12(b)(6). The District Court also granted appellee's motion for summary judgment on all but one of appellant's remaining claims. Subsequently, on October 2, 2006, the District Court granted summary judgment to appellee on Ms. Wiley's remaining claim that she suffered illegal retaliation when BBG forced her to use annual leave for the time that she took to attend depositions related to this lawsuit.

In this appeal, appellant claims that

1.  she suffered discrimination and retaliation when appellee failed to promote her to a GS-13 pay grade;

2.  she suffered discrimination and retaliation when appellee refused to allow her to participate in the managing editor rotation;

3.  she suffered retaliation when appellee retroactively charged her annual leave for the time that she took to attend depositions related to this lawsuit;

4.  the District Court erred in granting appellee's motion to strike her retaliatory harassment claim; and

5.  the District Court erred in granting appellee's motion to strike her retaliation claim stemming from the reduction in the number of minutes of airtime that she was assigned to produce.

We affirm the District Court's grant of summary judgment to appellee on appellant's first three claims. We reverse the District Court's decision to strike appellant's last two claims, but grant summary judgment to appellee on both.

***Standard of Review and Legal Standard for Title VII Claims***

We review the District Court's grant of summary judgment *de novo*. *Mastro v. Potomac Elec. Power Co.*, 447 F.3d 843, 849 (D.C. Cir. 2006). Summary judgment is appropriate only if there is "no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). "The inquiry performed is the threshold inquiry of determining whether . . . there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). In determining whether there are genuine factual issues in dispute, we must draw all reasonable inferences in favor of the nonmoving party. *Id.* at 255. Insofar as we are treating the District Court's decisions to strike two of appellant's claims as dismissals under Rule 12(b)(6), "[o]ur standard of review under Federal Rules 12(b)(6) and 56 is the same: *de novo*." *Wilson v. Peña*, 79 F.3d 154, 160 n.1 (D.C. Cir. 1996).

Under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), Title VII discrimination claims are assessed pursuant to a simple three-step framework:

> First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the [action in question]." Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

*Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981) (quoting *McDonnell Douglas*, 411 U.S. at 802). To

establish a prima facie case of discrimination, a claimant must show that "(1) she is a member of a protected class; (2) she suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination." *Brown v. Brody*, 199 F.3d 446, 452 (D.C. Cir. 1999). To establish a prima facie case of retaliation, a claimant must show that (1) she engaged in a statutorily protected activity; (2) she suffered a materially adverse action by her employer; and (3) a causal connection existed between the two. *Id.*; *see also Burlington N. & Santa Fe Ry. Co. v. White*, 126 S. Ct. 2405, 2414-15 (2006) (finding that Title VII's anti-retaliation provision prohibits all materially adverse actions, not merely those harms that are specifically employment-related). In either situation, as the Supreme Court has made clear, "[t]he burden of establishing a prima facie case . . . is not onerous." *Burdine*, 450 U.S. at 253.

Indeed, just two years after *Burdine* was decided, the Court emphasized, in strikingly clear terms, that

> [t]he prima facie case method established in *McDonnell Douglas* was never intended to be rigid, mechanized, or ritualistic. . . . Where the defendant has done everything that would be required of him if the plaintiff had properly made out a prima facie case, whether the plaintiff really did so is no longer relevant. The district court has before it all the evidence it needs to decide whether the defendant intentionally discriminated against the plaintiff.

*U.S. Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 715 (1983) (internal citation and quotation marks omitted). In this case, the District Court had before it hundreds of pages of documents, testimony from various witnesses that was provided during the investigation of appellant's claims by BBG's Office of Civil Rights, and depositions taken after the lawsuit was filed. So there is no doubt here that appellee aimed to "articulate[] legitimate reasons for [the allegedly discriminatory or retaliatory

actions] and proffered evidence in support of those reasons."
*George v. Leavitt*, 407 F.3d 405, 411 (D.C. Cir. 2005). Given
this record, we "need not address the Government's contentions
that [appellant] failed to make out a prima facie case." *Id.*
Rather, following the Court's direction in *Aikens*, we will
"proceed to the ultimate question of discrimination *vel non*." *Id.*
(internal quotation marks omitted).

### First Claim:  Failure to Promote to GS-13

Appellant claims that her failure to obtain a promotion to
the GS-13 level in 1997 and 1998 was the result of
discrimination based on her race and sex or retaliation for her
complaints to the BBG's Office of Civil Rights.  The District
Court held, in part, that appellant failed to establish a prima
facie case of discrimination, because she could not prove "that
anyone similarly situated was promoted when she was not."
*Kemi Southey-Cole v. Marc B. Nathanson*, Civ. A. No. 99-00975
at 22 (D.D.C. May 26, 2004).  The District Court applied an
erroneous legal standard in reaching this conclusion.  Although
appellant certainly could have offered evidence of "similarly
situated" employees in support of her claim, she was not
*required* to offer such evidence in order to make out a prima
facie case.  *See Mastro*, 447 F.3d at 850-51; *Stella v. Mineta*,
284 F.3d 135, 145-46 (D.C. Cir. 2002).

Nevertheless, because we review the District Court's
decision *de novo*, we conduct an independent evaluation of the
record to determine whether appellant offered sufficient
evidence to prove discrimination *vel non*.  We hold that she did
not.  The undisputed evidence in the record establishes that there
were only two ways for an employee in appellant's situation to
obtain a noncompetitive promotion (other than career ladder
promotions) at BBG:  (1) an impact promotion, which is based
on "exceptional ability exhibited by the employee"; and (2) an
accretion of duty promotion, pursuant to which a position is
reclassified at a higher grade "because the duties and

responsibilities of the position have increased over a period of time." Supplemental Declaration of Donna S. Grace, Joint Appendix ("J.A.") 236. Only the second – "accretion of duty promotion" – is at issue in this case.

Appellant offered virtually nothing to establish what her original duties as a GS-12 International Radio Broadcaster had been, what duties she was performing when she was denied a promotion, and what responsibilities the GS-13 position commonly entailed. Moreover, when BBG attempted to arrange a desk audit, in which a job classification specialist would have evaluated Ms. Wiley's work responsibilities, Ms. Wiley refused. Deposition of Verla M. Wiley (5/24/01), J.A. 842-43; Note to the Record of Janet Davis (1/26/98), J.A. 1371. Rather, when asked why she believed that she deserved a GS-13 promotion, appellant testified, "I thought I was doing a great job . . . . I just felt I deserved a 13." Deposition of Verla M. Wiley (5/24/01), J.A. 846. Although appellant attempts to compare herself to Joseph DeCapua, another English-to-Africa employee who was promoted to a GS-13 International Radio Broadcaster position, her argument falls far short. There is clear evidence in the record to indicate that DeCapua's job responsibilities had grown over time and that he had significantly greater responsibilities than appellant did at the time of his promotion. *See, e.g.*, Declaration of Fredrica B. Depew (11/9/01), J.A. 213; Deposition of Barry Maughan (4/18/01), J.A. 1077-78; Deposition of Joseph Anthony DeCapua (3/5/01), J.A. 916-18.

In sum, appellant failed to establish that she was denied a promotion as a result of illegal discrimination or retaliation. Appellant never proved that the duties and responsibilities of her job had increased so as to warrant an accretion of duty promotion. Without such evidence, appellant cannot prove that the failed promotion was a pretext for either discrimination or retaliation.

### *Second Claim:  Nonparticipation in the*
### *Managing Editor Rotation*

During the time when Barry Maughan was Chief of the English-to-Africa Division, he rotated the individuals who were assigned to serve in the managing editor position.  Appellant claims she was denied the opportunity to participate in this rotation because of illegal discrimination and retaliation.

The District Court erroneously found that appellant suffered no adverse employment action as a result of her exclusion from the managing editor rotation and, therefore, failed to make out a prima facie case on this claim.  An employment action may be sufficient to support a claim of discrimination if it results in "materially adverse consequences affecting . . . future employment opportunities such that a reasonable trier of fact could find objectively tangible harm." *Forkkio v. Powell*, 306 F.3d 1127, 1131 (D.C. Cir. 2002).  Exclusion from the managing editor rotation surely qualifies as an adverse employment action.

Maughan, who was appellant's manager, testified that he did not support appellant's request for a GS-13 promotion in part because she did not have any "supervisory duties" in her current job.  Deposition of Barry Maughan (4/18/01), J.A. 1088-89.  And Maughan acknowledged that the required "supervisory duties" included "be[ing] able to carry out the functions of a managing editor and senior editor."  *Id.*, J.A. 1073.  He also testified that, "outside of being a senior editor, [managing editor is] the most important function in the shop."  *Id.*  Given this testimony from appellant's manager, it can hardly be said that Ms. Wiley suffered no adverse employment action when she was barred from participating in the managing editor rotation.

Even though appellant may have suffered an adverse employment action, this, without more, is not proof of illegal discrimination or retaliation.  On the record here, it is obvious and undisputed that the responsibilities of managing editor were

time-consuming. *See* Declaration of Barry H. Maughan, J.A. 499-502. It is equally clear that, during the time period in question, appellant, who was serving as Vice President of the American Federation of Government Employees, Local 1812, was very busy with union work. *See* Deposition of Verla Wiley (6/6/01), J.A. 879-80; Deposition of Verla M. Wiley (5/24/01), J.A. 817-20; Deposition of Barry Maughan (4/18/01), J.A. 1079, 1087-89. Appellant herself stated that she served in a managing editor-type position at BBG in the 1980s for a show called "Nightline Africa," but had to stop after she became Vice President of Local 1812 in 1990. Deposition of Verla M. Wiley (5/24/01), J.A. 817-18. She responded in the affirmative when asked, "And because you had more responsibilities as vice president of the union, you couldn't do that and be managing editor, too?" *Id.* at 818. Appellant continued to hold the position of Vice President of Local 1812 in 1996 and 1997, when she sought to be included in the managing editor rotation.

Appellant does not claim that she was illegally discriminated against on the basis of her union activities, nor would such a claim be cognizable under Title VII. What is noteworthy here is that appellant does not really contest appellee's contention that she was too busy with her union duties to serve as managing editor. We therefore hold that appellee offered a legitimate, nondiscriminatory reason for appellant's nonparticipation in the managing editor rotation and appellant failed to prove that this reason was merely a pretext for discrimination or retaliation proscribed by Title VII.

### *Third Claim: Retroactive Application of Annual Leave Policy*

Appellant contends that she suffered unlawful retaliation when she was retroactively charged annual leave for attending witness depositions related to this lawsuit. In February 2001, Ms. Wiley approached her then-supervisor, Rebecca McMenamin, about taking "administrative leave" – paid leave

that is not charged against an employee's allotted annual leave – to attend witness depositions. McMenamin responded via email, indicating that administrative leave was unavailable in such circumstances. Email from Rebecca McMenamin to Verla Wiley *et al.* (2/14/01), J.A. 2077. That same day, appellant discussed the administrative leave issue with William Ohlhausen, Deputy General Counsel for BBG. Ohlhausen sent an email the following day indicating that he was unable to reach a conclusion as to whether administrative leave was authorized in Wiley's circumstances, and needed to research the issue further. Email from William Ohlhausen to Verla Wiley *et al.* (2/15/01), J.A. 61. Appellant continued attending depositions.

On October 5, 2001, guidelines applicable to all Voice of America employees were issued, delineating when employees could use administrative leave in connection with Title VII matters. Memorandum, J.A. 2113-14. These guidelines prohibited employees from taking official time to attend depositions other than their own. After this policy issued, McMenamin emailed appellant to inform her that she would be charged annual leave for the depositions she had previously attended; McMenamin's email noted that "[t]his policy indicates there is no change from the guidance I first sent you on February 14th, 2001." Email from Rebecca McMenamin to Verla Wiley *et al.* (10/9/01), J.A. 2125. Appellant was subsequently charged 56 hours of annual leave for time she spent attending depositions other than her own.

Appellant claims that BBG's decision to retroactively charge her annual leave was unlawful retaliation. As the District Court found, however, appellant cannot overcome the legitimate, nondiscriminatory reason for BBG's decision to charge her annual leave: No statute, regulation, or policy authorized administrative leave for an employee in appellant's circumstances. In fact, during the time period at issue here,

neither BBG's internal Manual of Operations nor the Negotiated Labor Management Agreement between Local 1812 and BBG authorized administrative leave for employees in appellant's situation. BBG Manual of Operations, J.A. 1765-68; Negotiated Labor Management Agreement, J.A. 1764. Appellant can hardly claim retaliation when she has not shown that she was entitled to paid leave. The October 2001 guidelines may have clarified the situation, but they did not cause appellant to lose anything to which she was entitled before the guidelines were issued. Furthermore, McMenamin's February 14, 2001 email to Ms. Wiley provided appellant with more than adequate notice that an attempt to take such leave would likely be unsuccessful. Appellant's decision to continue attending depositions after receiving Ohlhausen's email was, in the words of the District Court, "a calculated risk." *Kemi Southey-Cole v. Kenneth Y. Tomlinson*, Civ. A. No. 99-00975 at 16 (D.D.C. Oct. 2, 2006). "[N]o reasonable jury could infer retaliation from the agency's decision to comply with existing law and agency agreements." *Id.* at 22.

### *Fourth Claim:  Retaliatory Harassment*

The District Court granted appellee's motion to strike appellant's claim for retaliatory harassment, primarily on the grounds that it was raised for the first time in appellant's opposition to appellee's motion for summary judgment. This was error. The factual basis for appellant's "new" claim was substantially similar to the hostile work environment claim that appellant had alleged in her original complaint, and BBG did not demonstrate that allowing appellant's claim would cause undue prejudice. Therefore, this claim should not have been struck.

> The real issue . . . is not whether legal theories may be pleaded but whether the original theory may be discarded or augmented and recovery had on some other theory. The federal rules, and the decisions construing them, evince a belief that when a party has a valid claim, he should recover

on it regardless of his counsel's failure to perceive the true basis of the claim at the pleading stage, provided always that a late shift in the thrust of the case will not prejudice the other party in maintaining a defense upon the merits.

5 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 1219 at 281-83 (3d ed. 2004) (footnote omitted); *see also Alley v. Resolution Trust Corp.*, 984 F.2d 1201, 1207-08 (D.C. Cir. 1993) (allowing plaintiffs to add an ERISA claim after motions for summary judgment had been filed because there was no prejudice to the defendant).

The District Court granted summary judgment to appellee on appellant's hostile work environment claim, and that judgment has not been appealed. In addition to granting the motion to strike appellant's retaliatory harassment claim, the District Court held, in the alternative, that insofar as appellant's retaliatory harassment claim was merely a variation of her prior hostile environment claim, it lacked merit for the same reasons that the hostile environment claim had failed. During oral argument, appellant's counsel conceded that Ms. Wiley could not prevail on her retaliatory harassment claim unless she could establish that the alleged harassment resulted in a hostile environment. *See Hussain v. Nicholson*, 435 F.3d 359, 366 (D.C. Cir. 2006) (noting that "[i]n this circuit, a hostile work environment can amount to retaliation under Title VII"). Because there is no claim here that the District Court erred in granting summary judgment on appellant's hostile environment claim, appellant's retaliatory harassment claim necessarily fails as well. We therefore grant summary judgment for appellee on this claim.

### *Fifth Claim: Reduced Airtime*

The District Court granted appellee's motion to strike appellant's final claim, *i.e.*, that she suffered retaliation when McMenamin reduced her airtime production from 17 minutes to

13 minutes. The District Court struck this claim on the grounds that appellant failed to exhaust her administrative remedies. Appellant filed an informal complaint of discrimination, withdrew it on August 27, 2002, and never filed a formal complaint specifically listing her airtime claim.

The District Court erred in striking appellant's claim, because the reduced airtime allegation "could have reasonably been expected to grow out of [appellant's] earlier complaint." *Weber v. Battista*, 494 F.3d 179, 184 (D.C. Cir. 2007) (internal quotation marks omitted). Hattie Baldwin, the Director of the USIA's Office of Civil Rights, wrote to appellant confirming that her complaints of discrimination and retaliation had been received, acknowledged, and consolidated. Letter from Hattie P. Baldwin to Verla M. Wiley (5/14/98), J.A. 407-08. The complaints that were accepted for processing included the denial of "training for supervisory/managerial roles within the Branch," the denial of Wiley's "input" on "programming and policy with regard to office procedures and broadcasts," and the denial of "career advancement and promotional opportunities." *Id.* at 408. The record thus makes it clear that the airtime claim was "like or related" to the claims of discrimination and retaliation raised in appellant's original complaint. *Weber*, 494 F.3d at 184. "Therefore, we conclude [appellant] gave [BBG] an opportunity to resolve her claim administratively before she filed her complaint in district court." *Id.* The claim was properly before the District Court and should not have been struck.

Although it cannot be said that appellant failed to exhaust her administrative remedies, we nonetheless grant judgment to appellee. The District Court effectively dismissed appellant's claim pursuant to Federal Rule of Civil Procedure 12(b)(6). Rule 12(b) states that, if, on a motion to dismiss, "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment

and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." FED. R. CIV. P. 12(b).[1] In this case, the District Court considered "matters outside the pleading" in granting the agency's motion to strike, and both parties had a "reasonable opportunity to present all material made pertinent" to the motion. The District Court, however, did not convert what was ostensibly a 12(b)(6) motion to one for summary judgment. Nonetheless, in these circumstances, this court is free to characterize the District Court's Rule 12(b)(6) dismissal as a grant of summary judgment under Rule 56 and affirm, so long as we are assured that both sides had a reasonable opportunity to present evidence and there are no genuine issues of material fact. *See, e.g.*, *Ctr. for Auto Safety v. Nat'l Highway Traffic Safety Admin.*, 452 F.3d 798, 805 (D.C. Cir. 2006). Finding no merit in appellant's claim, we will grant summary judgment to appellee.

Appellant's claim lacks merit because she failed to establish that a reduction in airtime responsibilities constituted a materially adverse action for the purpose of establishing a prima facie case of retaliation. As noted above, "an employee suffers an adverse employment action if he experiences materially adverse consequences affecting the terms, conditions, or privileges of employment or future employment opportunities such that a reasonable trier of fact could find objectively tangible harm." *Forkkio*, 306 F.3d at 1131. Appellant offered nothing to the District Court or to this court establishing that the

---

[1] Rule 12(d), which went into effect on December 1, 2007 and is titled "Result of Presenting Matters Outside the Pleadings," states that "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."

reduction in her airtime production – from 17 minutes to 13 minutes – could affect her compensation, grade, or opportunity for future advancement.

Appellant has also failed to establish that "a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington*, 126 S. Ct. at 2415 (internal quotation marks omitted). Without such proof, there can be no finding of unlawful retaliation. Actionable retaliation claims are limited to those where an employer causes "*material* adversity," not "trivial harms." *Id.* Appellant has failed to show that the disputed reduction in airtime production was anything other than a trivial harm, if that.

### *Conclusion*

For the foregoing reasons, the District Court's grant of summary judgment to appellee with respect to appellant's first three claims is affirmed. The District Court's decision to strike appellant's last two claims is reversed, and summary judgment is granted to appellee on those claims as well.