**Rebecca R. GRAY, Appellant**

**v.**

**Anthony FOXX, Secretary, U.S. Department of Transportation, Appellee.**

**No. 14–5306.**

United States Court of Appeals, District of Columbia Circuit.

Dec. 18, 2015.

Harry James Jordan, Esq., Jordan and Associates, Washington, DC, for Plaintiff–Appellant.

R. Craig Lawrence, Peter Rolf Maier, Heather Graham–Oliver, U.S. Attorney's Office, Washington, DC, for Defendant–Appellee.

Before: HENDERSON, GRIFFITH and WILKINS, Circuit Judges.

***JUDGMENT***

PER CURIAM.

This appeal of a decision of the United States District Court for the District of Columbia was presented to the Court, and briefed and argued by counsel. The Court has accorded the issues full consideration and has determined that they do not warrant a published opinion. *See* D.C. Cir. R. 36(d). For the reasons stated below, it is

**ORDERED and ADJUDGED** that the District Court's determination be affirmed.

It is clear that the District Court's grant of summary judgment was proper. Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). "A movant is entitled to summary judgment when the evidence is such that a reasonable jury, drawing all reasonable inferences in the non-movant's favor, could not return a verdict for the non-movant." *Walker v. Johnson,* 798 F.3d 1085, 1091 (D.C.Cir.2015). "[T]he defendant need only identify the ways in which the plaintiff has failed to come forward with sufficient evidence to support a reasonable jury to find in her favor on one or more essential elements of her claim." *Grimes v. District of Columbia,* 794 F.3d 83, 93 (D.C.Cir.2015).

We begin with a summary of the relevant facts, taken in the light most favorable to Appellant, the non-movant below. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In April 1999, Rebecca Gray began working as a Human Factors Analyst for Innovative Solutions International providing support services to the Federal Aviation Administration ("FAA"). In 2001, she accepted a position providing similar services for the FAA with L–3 Communications Titan ("Titan"), a subcontractor for Hi–Tec, which was a contractor for the FAA. While working for Titan, Glen Hewitt of the FAA directed Gray's day-to-day work and received her work product. Hewitt, in turn, reported to Dr.

Paul Krois, the Acting Program Director for the FAA's Human Factors Group.

In July 2005, Gray applied for two positions with the FAA's Human Factors Group. The initial evaluation of qualified candidates rated Gray a 10—the highest score given. One other candidate, Michael Snow, also received a 10. Following a secondary evaluation, Gray's total evaluation score was lowered to an 8 because of problems with "[p]ersonal relations," "deadlines," "multitasking," and "effectiveness." J.A. 161. This adjustment resulted in another four candidates receiving higher evaluation scores than Gray. Snow, the highest rated candidate, turned down the job offer, and Edmundo Sierra, a male in his early thirties, and Glen Gallaway, another male, were selected for the positions. Gray contends that she possessed over thirty years' experience in the Human Factors field, including ten years operating her own business. Gray had also worked with the Human Factors Group for nearly seven years, while Sierra and Gallaway had worked with the Human Factors Group for four and three years, respectively. Sierra and Gallaway possessed master's degrees, while Gray possessed only a bachelor's degree. Around the time of Gray's application, the Human Factors Group employed only one woman. According to Gray, women who worked with the Human Factors Group were subjected to poor treatment and were dissatisfied with the working environment. Additionally, during her time with the FAA, Hewitt yelled and screamed at Gray.

On December 6, 2005, Gray met with Joan Bauerlein, the FAA's Director of Research Engineering and Krois's supervisor, to complain about her experience with the Human Factors Group and suggest she was not being used to her full ability.

Later, after learning that Sierra and Gallaway were hired for the positions she applied for, Gray asked Hewitt and Krois why she was not hired for the positions. According to Gray, they both claimed the position required an aircraft certification background, a qualification that did not appear in the vacancy notices and that Sierra and Gallaway did not possess. Additionally, Hewitt and Dino Piccione, another FAA supervisor, told her she could do "nothing" to improve her prospects of being hired in the future.

According to Gray, she filed an informal EEO complaint on January 6, 2006. On January 18, 2006, Russ Chew, the COO for the Air Traffic Organization, visited the Human Factors office and met with members of the staff. Gray interrupted the meeting in ways that Hewitt considered "inappropriate." J.A. 207. Following the meeting, Piccione, Hewitt, and Krois exchanged emails discussing what they considered to be Gray's inappropriate conduct during the meeting. Afterward, Krois met with a member of Hi–Tec's team who promised to talk to a member of Titan's team about Gray's behavior. Additionally, Gray was scheduled to present at a discussion on Human Factors requirements on February 9, 2006, but she was removed from speaking at the presentation and relegated to a notetaking position. Gray also was excluded from meeting the new Human Factors Group director. Gray filed a formal EEO complaint on March 16, 2006.[1]

In 2007, Hewitt again documented what he considered to be Gray's unprofessional behavior. In April 2008, Hewitt informed Gray that her position with the FAA would be eliminated due to budget restraints, and her last day with the FAA was April 30, 2008. On June 13, 2008, Gray filed anoth-

1. Gray's brief claims she filed her formal complaint on March 26, 2006, but the actual date on the formal complaint is March 16, 2006. J.A. 174.

er complaint with the EEOC. On December 9, 2011, Gray filed a complaint in the District Court against the Secretary of Transportation ("the Secretary"), alleging the following four counts: 1) unlawful failure to hire because of gender; 2) hostile work environment; 3) unlawful failure to hire because of age; and 4) unlawful retaliation.

Gray contends that she was not hired for the two positions for which she applied because she is a woman. To state a prima facie case of discrimination using the burden shifting framework of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), "a plaintiff must allege she is part of a protected class under Title VII, she suffered a cognizable adverse employment action, and the action gives rise to an inference of discrimination." *Walker,* 798 F.3d at 1091. "If the plaintiff clears that hurdle, the burden shifts to the employer to identify the legitimate, non-discriminatory ... reason on which it relied in taking the complained-of action." *Id.* The Secretary asserts that Gray was not hired because the two candidates who were hired possessed better qualifications. When an employer asserts a legitimate, non-discriminatory reason for the decision and moves for summary judgment, the *McDonnell Douglas* framework falls away, and the court must simply determine whether "the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the employee on the basis of ... sex." *Brady v. Office of Sergeant at Arms,* 520 F.3d 490, 494 (D.C.Cir. 2008). To determine whether a reasonable jury could find in Gray's favor, we must consider "all the evidence, including (1) the plaintiff's prima facie case; (2) any evidence the plaintiff presents to attack the employer's proffered explanation for its actions; and (3) any further evidence of discrimination that may be available to the plaintiff (such as independent evidence of discriminatory statements or attitudes on the part of the employer)." *Salazar v. Wash. Metro. Transit Auth.,* 401 F.3d 504, 508 (D.C.Cir.2005) (internal quotation marks omitted). To prove pretext, Gray must show that "the qualifications gap [is] great enough to be inherently indicative of discrimination." *Jackson v. Gonzales,* 496 F.3d 703, 707 (D.C.Cir.2007) (quoting *Holcomb v. Powell,* 433 F.3d 889, 897 (D.C.Cir. 2006)).

Gray contends that her years of additional experience, both prior to and including her time with the FAA, outweighed Sierra's and Gallaway's experience and education. However, this alleged qualifications gap is not inherently indicative of discrimination. Additionally, Gray contends the change in her candidate score demonstrates that "the selection process had been corrupted in favor of Sierra and Gallaway." Brief of Appellant, *Gray v. Foxx,* No. 14-5306 (D.C. Cir.), Doc. No. 1551442, at 22. Although "an unexplained inconsistency [in an application process] can justify an inference of discriminatory motive," *Lathram v. Snow,* 336 F.3d 1085, 1093 (D.C.Cir.2003), Gray presents no evidence that the two rounds of evaluations were not the normal method for selecting candidates for these positions. Finally, Gray contends that the relative numbers of male and female employees, as well as past complaints from women revealed during the EEO investigation, support an inference of discrimination. However, the significance of the relative number of employees who are members of the protected class is limited because "[i]n *individual* disparate treatment cases ... statistical evidence is less significant because the ultimate issue is whether the *particular* plaintiff was the victim of an illegitimately

motivated employment decision." *Hairston v. Vance-Cooks,* 773 F.3d 266, 274–75 (D.C.Cir.2014) (quoting *Krodel v. Young,* 748 F.2d 701, 710 (D.C.Cir.1984)). Furthermore, because we know little "about the nature, merit, or outcome of th[e]se complaints," past complaints have limited probative value and do not create a genuine issue of material fact about whether Gray was passed over because of her sex. *Holcomb,* 433 F.3d at 900; *see also Hairston,* 773 F.3d at 274 (finding no genuine issue of material fact where employee "relie[d] on discrimination complaints filed in the past to establish institutional discrimination").

Gray also contends that she was not hired for one of the positions for which she applied because she is over the age of 40. The Secretary asserts that Gray was not hired because Sierra's qualifications were better than Gray's. Accordingly, Gray must produce evidence sufficient for a reasonable jury to find the Secretary's reason pretextual and that the Secretary intentionally discriminated against Gray because of her age. *Baloch v. Kempthorne,* 550 F.3d 1191, 1198 (D.C.Cir.2008). Gray's evidence regarding her relative qualifications fails to support a claim of age discrimination for the same reasons it fails to support a claim of sex discrimination. Gray's only additional argument in support of age discrimination is that Sierra, who was hired for one of the two positions, is younger than she. These facts, viewed in the light most favorable to Gray, do not establish that Gray "lost out *because of [her] age.*" *Dunaway v. Int'l Bhd. of Teamsters,* 310 F.3d 758, 767 (D.C.Cir.2002) (quoting *O'Connor v. Consol. Coin Caterers Corp.,* 517 U.S. 308, 312, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996)). Additionally, the fact that Gray applied for two positions and one of those positions was filled by Gallaway, who was older than Gray, undercuts Gray's claim of age discrimination. *See Murray v. Gilmore,* 406 F.3d 708, 715 (D.C.Cir.2005) (noting that "a replacement within the same protected class cuts strongly against any inference of discrimination" but explaining that "[t]his does not mean that a jury could never infer discrimination where the plaintiff was replaced by a member of the same protected class").

Gray further argues that her removal from the presentation, exclusion from the meeting, emails critical of her performance, and ultimate termination were in retaliation for complaining about discriminatory treatment. To establish a prima facie case of retaliation, a plaintiff must show "(1) that [s]he engaged in statutorily protected activity; (2) that [s]he suffered a materially adverse action by h[er] employer; and (3) that a causal link connects the two." *Jones v. Bernanke,* 557 F.3d 670, 677 (D.C.Cir.2009). Once a plaintiff establishes the prima facie case, the burden switches to the employer to produce a legitimate, non-discriminatory reason for its action. *Taylor v. Solis,* 571 F.3d 1313, 1320 n. * (D.C.Cir.2009) (citing *Wiley v. Glassman,* 511 F.3d 151, 155 (D.C.Cir. 2007) (per curiam)). If the employer meets this burden, "the court should proceed to the question of retaliation *vel non.* The court can resolve that question in favor of the employer based either upon the employee's failure to rebut its explanation or upon the employee's failure to prove an element of her case," including whether an "employer took a materially adverse action against" the employee. *Id.* An employer cannot retaliate against an employee unless the employer has knowledge of the protected activity, and in order to survive summary judgment, an employee must "offer circumstantial evidence that could reasonably support an inference that they did." *Jones,* 557 F.3d at 679.

Gray has not submitted any evidence to show that the actions she endured constitute the type of materially adverse action to support a claim of retaliation. Gray's removal from a presentation does not qualify as a materially adverse action because Gray offers no evidence that her removal "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Baird v. Gotbaum* (*Baird I*), 662 F.3d 1246, 1248 (D.C.Cir.2011) (quoting *Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 68, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006)). Gray has submitted no evidence that her removal "was anything other than a trivial harm, if that." *Wiley,* 511 F.3d at 161. Furthermore, Gray's filing of her formal EEO complaint after being removed from the presentation undercuts any argument that a reasonable worker would be dissuaded from filing a charge of discrimination after removal from the presentation. Likewise, Gray offers no evidence that her exclusion from meeting the new director amounted to anything more than a trivial harm. Similarly, Gray cannot show that the emails were a materially adverse action. Although we do not appear to have addressed this precise circumstance in the past, emails critical of an employee's performance are "akin to the sort of public humiliation or loss of reputation that we have consistently classified as falling below the requirements for an adverse employment action." *Baird I,* 662 F.3d at 1249 (internal quotation marks omitted). Moreover, Gray filed her formal complaint of discrimination after the emails were exchanged. Finally, Gray's termination in 2008 is too far removed from her protected activity to demonstrate a causal connection. *See, e.g., Clark Cty. Sch. Dist. v. Breeden,* 532 U.S. 268, 274, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001) ("Action taken ... 20 months later suggests, by itself, no causality at all."). Gray also offers no evidence, other than her own statements, that the Secretary's reason for her termination, a budget shortfall, was pretextual.

Finally, Gray submits that her tenure at the FAA was marked by conduct that created a hostile work environment. To prevail on her hostile work environment claim, Gray must show that she was subjected "to discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Baloch,* 550 F.3d at 1201 (internal quotation marks omitted). In making this determination, "the court looks to the totality of the circumstances, including the frequency of the discriminatory conduct, its severity, its offensiveness, and whether it interferes with an employee's work performance." *Id.* "[T]he standard for severity and pervasiveness is ... an *objective* one." *Baird v. Gotbaum* (*Baird II*), 792 F.3d 166, 172 (D.C.Cir.2015). The only evidence submitted by Gray to support her hostile work environment claim is that Hewitt yelled and belittled her. However, Gray does not connect his remarks to any protected status. Gray contends that Hewitt's treatment of her led to anxiety and depression, but subjective harm is insufficient to support a hostile work environment claim because the test for severity and pervasiveness is an objective one. *See id.* Given the lack of evidence about the frequency and specificity of Hewitt's remarks, Gray has not shown conduct severe or pervasive enough to give rise to a hostile work environment claim.

Pursuant to D.C. Circuit Rule 36, this disposition will not be published. The Clerk is directed to withhold issuance of the mandate herein until seven days after resolution of any timely petition for re-

hearing or petition for rehearing en banc. *See* Fed. R.App. P. 41(b); D.C. Cir. R. 41.