Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued September 15, 2003      Decided December 12, 2003

No. 02-5261

CAROLYN TAYLOR,
APPELLANT

v.

LAWRENCE M. SMALL,
SECRETARY OF THE SMITHSONIAN INSTITUTION,
APPELLEE

———

Appeal from the United States District Court
for the District of Columbia
(No. 99cv02035)

———

*Barbara B. Hutchinson* argued the cause and filed the briefs for appellant.

*Madelyn E. Johnson*, Assistant U.S. Attorney, argued the cause for appellee. On the brief were *Roscoe C. Howard, Jr.*, U.S. Attorney, and *R. Craig Lawrence* and *Edith M. Shine*, Assistant U.S. Attorneys.

———

Bills of costs must be filed within 14 days after entry of judgment. The court looks with disfavor upon motions to file bills of costs out of time.

Before: GINSBURG, *Chief Judge*, and SENTELLE and HENDERSON, *Circuit Judges*.

Opinion for the Court filed by *Chief Judge* GINSBURG.

GINSBURG, *Chief Judge*: Carolyn Taylor brought suit against her employer, the Secretary of the Smithsonian Institution, alleging the Smithsonian discriminated against her upon the bases of her race, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 1981a and 2000e–16, and of her "excessive weight," in violation of § 504 of the Vocational Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794. On cross motions for summary judgment, the district court dismissed Taylor's claim under the Rehabilitation Act and granted summary judgment in favor of the defendant on the Title VII claims. Taylor appeals the judgment of the district court and challenges certain of its procedural orders.

We conclude that (1) Taylor failed to establish a prima facie case of race discrimination under Title VII; (2) a federal employee may not bring a claim of employment discrimination under § 504 of the Rehabilitation Act; and (3) the district court did not abuse its discretion in making the procedural rulings under review. We therefore affirm the judgment of the district court in all respects.

## I.   Background

We recount the facts before the district court in the light most favorable to the plaintiff. Taylor, who is an African–American, began to work at the Office of Smithsonian Institution Archives (OSIA) in January 1989 as an Administrative Assistant (GS–7). By May 1994 she was the GS–11 supervisor of the Administrative Services Division of the OSIA. Shortly thereafter, having served approximately six months in her GS–11 position, Taylor orally asked Edith Hedlin, who had recently become the Director of the OSIA, to promote her to GS–12. Hedlin declined. Taylor claims she sought the same promotion in July and November 1995.

As the supervisor of the Administrative Services Division, one of Taylor's main responsibilities was balancing the budget

of the OSIA. When Taylor failed to balance the budget for FY 1996, Hedlin rated her overall performance in 1996 "unacceptable." Hedlin nevertheless awarded Taylor a bonus of $500 for her performance that year. Hedlin also placed Taylor on a 90–day Performance Improvement Plan (PIP). On May 3, Hedlin informed Taylor she had successfully completed the PIP. Three months later Hedlin revised Taylor's 1996 performance appraisal to reflect that she had met her responsibility for balancing the budget and had earned an overall rating of "fully successful".

Because Taylor had now met or exceeded both her critical responsibilities (budget and procurement), she should have been rated "highly successful" rather than "fully successful" overall. Taylor so informed Hedlin, but Hedlin did not attempt at that time to determine whether she had erred. Taylor received the same overall rating for 1997.*

Taylor filed a complaint with the Equal Employment Opportunity Commission claiming she had been the victim of discrimination based upon her race and her weight. Thereafter Hedlin, who was aware of Taylor's EEOC complaint, informed Taylor that Ms. Fynette Eaton would be Taylor's new first-line supervisor; Hedlin would assume the role of second-line supervisor. Hedlin concedes she mentioned Taylor's EEOC complaint when meeting with Taylor to discuss the supervisory change; Taylor concedes she had no problem with the change. Hedlin also modified Taylor's Performance Plan to drop "procurement of supplies and services" and to add "Human Resources Management" as a "critical" responsibility. In addition, the number of elements for which her performance would be rated was reduced to four from seven.

In July 1999 Hedlin became aware that Taylor was indeed entitled to an overall rating of "highly successful" for both 1996 and 1997 and changed Taylor's performance evaluations accordingly. Hedlin also awarded Taylor an additional $500

---

* Hedlin rated Taylor "fully successful" in 1996, and "fully satisfactory" in 1997, but the two were equivalent ratings; only the nomenclature used on the rating form changed.

for her performance in 1996, thus bringing Taylor's total bonus for 1996 to the same $1000 Hedlin had given the other employee whom she had rated "highly successful" that year. (Hedlin did not award a bonus to any employee who had earned a "highly successful" rating for 1997.)

Taylor sued the Secretary of the Smithsonian Institution in July 1999, alleging race discrimination in the form of erroneously low performance evaluations for 1996 and 1997, placement in the PIP, failure to promote, hostile work environment, and retaliation for filing a complaint with the EEOC, all in violation of Title VII of the Civil Rights Act of 1964. Taylor also alleged discrimination on the basis of her weight, which she claimed was a violation of § 504 of the Vocational Rehabilitation Act.

After discovery, the Smithsonian filed a motion for summary judgment in which it did not address Taylor's claim of retaliation. In her opposition to that motion, Taylor argued the Smithsonian had conceded the retaliation claim should go to trial. The Smithsonian then sought leave to file an untimely second motion for summary judgment, claiming it had not understood Taylor to have pleaded a claim of retaliation because the complaint was poorly drafted. The district court granted the motion, noting that — although Count III could be construed to state such a claim — the word "retaliation" did not appear anywhere in Taylor's complaint.

On cross motions, the district court dismissed Taylor's Rehabilitation Act claim, holding that an employee of the Smithsonian Institution may not bring a claim of employment discrimination pursuant to § 504 of the Act. Turning to her Title VII claims, the district court held Taylor had not made out a prima facie case of discrimination because she had not alleged an adverse employment action, she was not eligible for a promotion at the time she sought it, and she failed to identify any similarly situated individual who sought and received a promotion at the relevant time.

## II.  Analysis

We review de novo both the district court's dismissal of Taylor's claim under the Rehabilitation Act and its grant of

summary judgment on Taylor's claims under Title VII. Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). There is a "genuine issue" only if "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A moving party is entitled to a judgment as a matter of law [against] a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A. The Rehabilitation Act

Taylor argues the district court erred in dismissing her Rehabilitation Act claim upon the ground that an employee of the federal government may not bring a claim of employment discrimination under § 504.* Although this Court has not definitively resolved the question whether a federal employee may proceed under § 504, we have twice " 'strongly suggest[ed]' that litigants proceed under section 501." *Barth v. Gelb*, 2 F.3d 1180, 1183 (D.C. Cir. 1993), quoting *Milbert v. Koop*, 830 F.2d 354, 357 (D.C. Cir. 1987).*

---

* Section 504, 29 U.S.C. § 794, provides:

No otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, of be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency. . . .

* Section 501(b), 29 U.S.C. § 791(b), provides:

Each department, agency, and instrumentality . . . in the executive branch and the Smithsonian Institution shall . . . submit . . . an affirmative action program plan for the hiring, placement, and advancement of individuals with disabilities in such department, agency, instrumentality, or Institution.

Section 505, 29 U.S.C. § 794a(a)(1), makes Title VII remedies available to an employee "with respect to any complaint under section 791 of this title. . . ."

Section 504 does not on its face apply to federal employees; rather, it prohibits "discrimination under any program or activity receiving federal financial assistance or under any program or activity conducted by any Executive agency...." 29 U.S.C. § 794. Employees of the Smithsonian Institution are not participants in or beneficiaries of a "program or activity conducted by any Executive agency"; they are Government employees. Moreover, because the Congress addressed discrimination against Government employees, including specifically employees of the Smithsonian Institution, in § 501, it is highly unlikely the Congress meant to address the subject again in § 504. *See McGuinness v. U.S. Postal Serv.*, 744 F.2d 1318, 1321 (7th Cir. 1984). Both in its own terms and in the context of the statutory scheme, therefore, it is unreasonable to interpret § 504's prohibition of "discrimination under any program or activity conducted by any Executive agency" as a prohibition of discrimination in employment by the Government.

We now hold, therefore, in conformity with the majority of courts to have addressed the issue, that § 504 does not provide federal employees an "alternative route for relief under the Rehabilitation Act." *Rivera v. Heyman*, 157 F.3d 101, 104 (2nd Cir. 1998) (so holding where, as here, plaintiff was employee of Smithsonian Institution); *see Johnson v. U.S. Postal Serv.*, 861 F.2d 1475, 1478 (10th Cir. 1989) ("*only* section 501 provides a private cause of action for federal employees ... alleging employment discrimination based on handicap") (emphasis in original); *Boyd v. U.S. Postal Serv.*, 752 F.2d 410, 413 (9th Cir. 1985) ("section 501 is the exclusive remedy for discrimination in employment by [a federal agency] on the basis of handicap"); *McGuinness,* 744 F.2d at 1321. *But see Gardner v. Morris,* 752 F.2d 1271, 1277 (8th Cir. 1985) (recognizing cause of action for employment discrimination against federal employer under both §§ 501 and 504); *Smith v. U.S. Postal Serv.*, 742 F.2d 257 (6th Cir. 1984) (same); *Prewitt v. U.S. Postal Serv.*, 662 F.2d 292 (5th Cir. 1981) (same).

Taylor also argues that dismissal of her claim was inappropriate, notwithstanding her failure to invoke the correct sec-

tion of the Act, because she had set forth all the elements of a claim under § 501. Taylor's argument is unavailing, at least in the circumstances of this case. The Smithsonian's motion for summary judgment put Taylor on notice of her error. Taylor's only response was that she had inadvertently cited § 505(1) rather than § 505(a)(1) as the source of the district court's jurisdiction. As the Smithsonian had argued in its motion, however, the problem is that she premised her claim upon § 504 rather than § 501. Taylor could have sought leave to amend her complaint but instead she staked her all on § 504, and the district court properly concluded that she failed to state a claim upon which relief may be granted.

Even if Taylor had pleaded her claim under § 501, we doubt the district court would have had jurisdiction to entertain it because she failed to exhaust her administrative appeal rights. *See, e.g., Downey v. Runyon*, 160 F.3d 139, 145 (2d Cir. 1998) (exhaustion required before federal court can hear claim under § 501); *Spence v. Straw*, 54 F.3d 196, 200 (3d Cir. 1995) (exhaustion required for claims under both §§ 501 and 504); *Doe v. Garrett*, 903 F.2d 1455, 1459–60 (11th Cir. 1990) (exhaustion required under § 501); *Boyd v. United States Postal Service*, 752 F.2d 410, 412–13 (1st Cir. 1985) (same)*; McGuinness*, 744 F.2d at 1320 (same); *Gardner v. Morris*, 752 F.2d 1271, 1279 (8th Cir. 1985) (exhaustion required for claims under both §§ 501 and 504).

B. Title VII

Title VII provides that "[a]ll personnel actions affecting employees ... in the Smithsonian Institution ... shall be made free from any discrimination based on race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–16. Because Title VII does not proscribe discrimination based upon an employee's excessive weight, the district court properly considered only Taylor's claim of race discrimination under Title VII.

Where, as here, a plaintiff proffers only indirect evidence of unlawful discrimination, her case is subject to the three-part test the Supreme Court set forth in *McDonnell Douglas*

*Corp. v. Green*, 411 U.S. 792, 802–04 (1973). As we recently reiterated:

> Under *McDonnell Douglas*, it is the plaintiff's burden to establish a prima facie case of discrimination by a preponderance of the evidence. If the plaintiff establishes a prima facie case, the employer must then articulate a legitimate, nondiscriminatory reason for its actions. The plaintiff must then demonstrate that the employer's stated reason was pretextual and that the true reason was discriminatory.

*Stella v. Mineta*, 284 F.3d 135, 144 (D.C. Cir. 2002) (citations omitted).

In order to make out a prima facie case of racial discrimination, Taylor must demonstrate: (1) she suffered an "adverse employment action"; and (2) the adverse action occurred in circumstances that give rise to an inference of racial discrimination. *See Stella v. Mineta*, 284 F.3d 135, 146 (D.C. Cir. 2003). In order to make out a prima facie case of retaliation, Taylor must show: (1) she engaged in a statutorily protected activity; (2) she suffered an adverse employment action; and (3) there is a causal connection between the two. *See Morgan v. Fed. Home Loan Home Loan Mortgage Corp.*, 328 F.3d 647, 651 (D.C. Cir. 2003).

As detailed below, Taylor failed to make out a prima facie case for any count of her complaint. The district court therefore properly entered summary judgment in favor of the Smithsonian on all Taylor's Title VII claims.

1. Count I: Low Performance Evaluations

Taylor first argues both her being made subject to a PIP and Hedlin's failure to complete her performance appraisals in a timely manner were adverse employment actions and were based upon her race. An "adverse employment action" within the meaning of *McDonnell Douglas* is "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998). As

we have noted before, "formal criticism or poor performance evaluations are [not] necessarily adverse actions" and they should not be considered such if they did not "affect[ ] the [employee's] grade or salary." *Brown v. Brody*, 199 F.3d 446, 457–58 (D.C. Cir. 1999).

Taylor did not present any evidence to the effect that either her being put on the PIP or the delay in receiving her 1996 and 1997 performance evaluations affected her grade or salary. Indeed, Taylor did not present evidence suggesting she suffered any "significant change in [her] employment status." Taylor alleges only that Hedlin improperly "placed [her] on a ninety day [PIP]"; Hedlin "refused to terminate the plan, even though [Hedlin] had orally informed [her] that [she] had successfully completed the plan"; Hedlin did not execute a 1996 performance evaluation for Taylor until September 1997; and, due to the delay in removing Taylor from the PIP, Taylor "did not receive performance standards" and an evaluation for 1997 until May 1998. Taylor does not dispute, however, that Hedlin removed her from the PIP just two weeks after the plan was scheduled to end. In fact, Taylor's affidavit indicates that Hedlin informed Taylor she had successfully completed the PIP "on May 3, 1997," the date on which the plan was scheduled to end. Even assuming there was a brief delay in removing Taylor from the PIP, she does not explain why we should consider that an adverse employment action. Nor did she claim any adverse effect caused by the delay in receiving her performance evaluations. We therefore conclude that neither Taylor's placement in the PIP nor the delay of her performance evaluations was an adverse employment action upon which Taylor may base a claim of discrimination.

Taylor next argues the district court erred in holding her erroneous performance rating — with its concomitant effect upon her bonus — was not an adverse employment action because Hedlin corrected the evaluation and paid the proper bonus before Taylor brought this suit. To be sure, loss of bonus money because of an improperly low performance rating may constitute an adverse employment action for the purposes of Title VII. *See Russell v. Principi*, 257 F.3d 815,

819 (D.C. Cir. 2001) (contrasting performance evaluations with bonuses). The issue whether an employer can cure a violation of Title VII and thereby avoid liability for the violation, however, is one of first impression in this circuit.

We agree with the four other circuits to have addressed the question: An employer may cure an adverse employment action — at least one of the sort here alleged — before that action is the subject of litigation. *See White v. Burlington Northern & Santa Fe Railway Co.*, 310 F.3d 443, 452 (6th Cir. 2002) (reinstatement that "puts the plaintiff in the same position she would have been in absent the suspension constitutes the 'ultimate employment decision,' thereby negating a potentially adverse intermediate employment decision"), *reh'g en banc granted and judgment vacated*, 321 F.3d 1203 (2003); *Pennington v. City of Huntsville*, 261 F.3d 1262, 1267–68 (11th Cir. 2001) (no adverse employment action where plaintiff initially denied but shortly thereafter received promotion); *Brooks v. San Mateo*, 229 F.3d 917, 929–30 (9th Cir. 2000) (retaliatory lowering of performance evaluation not adverse employment action where evaluation was "on appeal" and might have been corrected if plaintiff had not quit her job while appeal was pending); *Benningfield v. City of Houston*, 157 F.3d 369, 378 (5th Cir. 1998) ("We need not address whether a mere delay in promotion constitutes an adverse employment action because [plaintiff] received the promotion with retroactive pay and seniority"); *cf. Page v. Bolger*, 645 F.2d 227, 233 (4th Cir. 1981) (en banc) ("there are many interlocutory or mediate decisions having no immediate effect upon employment conditions which were not intended to fall within the direct proscriptions of . . . Title VII").

As the district court reasoned:

> Permitting employers the opportunity to correct workplace wrongs prior to litigation is the objective of the EEO process. If a plaintiff were permitted a right to sue even if his or her employer had corrected the grievance, there would be absolutely no incentive for employers to make adjustments for past conduct during the EEO process.

Mem. Op. at JA 60, citing *Martini v. Federal Nat'l Mortgage Ass'n*, 178 F.3d 1336, 1338 (D.C. Cir. 1999) (remanding to district court with instructions to dismiss plaintiff's suit as untimely because "Title VII requires complainants to wait 180 days before suing in federal court so that the Commission may informally resolve as many charges as possible"). Because Hedlin corrected her error in rating Taylor and increased Taylor's bonus accordingly before Taylor filed suit, there was no unremedied adverse employment action when the suit was filed and the district court properly granted summary judgment in favor of the Smithsonian on Count I.

2.   Count II: Failure to Promote

In Count II of her complaint Taylor claimed she was denied a promotion because of her race. Taylor does not claim she sought promotion into a vacant position. Rather, she claims, with her current responsibilities, she should have received an increase in grade and salary. Because "the traditional *McDonnell Douglas* test does not fit" such a case, we "adjust the *McDonnell* formula to ask whether a similarly situated person ... requested and received the benefit she sought." *Cones v. Shalala*, 199 F.3d 512, 517 (D.C. Cir. 2000). In order to make out a prima facie case of discriminatory refusal to promote, therefore, the plaintiff must show that she sought and was denied a promotion for which she was qualified, and that "other employees of similar qualifications ... were indeed promoted at the time the plaintiff's request for promotion was denied." *Bundy v. Jackson*, 641 F.2d 934, 951 (D.C. Cir. 1981).

At the time Taylor requested a promotion to GS–12, she had spent less than eight months as a GS–11 employee. Under the applicable personnel regulation, an employee must have spent at least one year in grade GS–11 before she may be considered for promotion to a GS–12 or higher position. *See* 5 C.F.R. § 300.604(a). The district court therefore properly found Taylor was not eligible for promotion at the time she sought it.

Taylor argues the district court erred in failing to consider requests for promotion she claims to have made in July and

November 1995. Although a district court should consider on a motion for summary judgment whether "postpleading material" suggests there are triable issues of material fact, WRIGHT ET AL., FEDERAL PRACTICE & PROCEDURE: CIVIL 3D § 2721, at 366, the motion cannot "be defeated by factual assertions in a brief by the party opposing it," *id.* § 2723, at 389–90. Because mention of these purported requests and denials appear only in Taylor's memorandum in opposition to the Smithsonian's motion for summary judgment, and not in her complaint or other verified pleading, the district court properly concluded it was not obliged to deal with them at all. *See* Fed. R. Civ. P. 56(c) (summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue . . . .").

In any event, Taylor's present claim to have sought promotion in July and November 1995 finds scant support in the record. As support for the alleged request of July 1995, Taylor cites a memorandum dated July 7 from herself and Hedlin to two other employees of the OSIA. The subject of the memorandum is "Agenda," and the relevant portion reads:

> Promotion for Carolyn [Taylor] beyond the GS–11 will be dependent upon her budget responsibilities. Julie indicated that OSIA may not have a large enough budget to warrant further grade increases for Carolyn, but they would do comparisons and give her the info.

The memorandum does not indicate that Taylor requested promotion in July 1995. It contains a statement, albeit an ambiguous one, about the possibility of a promotion, but it does not indicate she requested a promotion. The alleged November 1995 request is nowhere even mentioned in the record. Indeed, as the Smithsonian points out, the only document Taylor cites as support for her claim that she sought promotion in November is dated September 1995. Finally, and most important, Taylor's claim to have sought

promotion in July and November 1995 is contradicted by her own earlier deposition, in which she testified only that she requested promotion within a month or two after Hedlin became Director of the SIA. Clearly, therefore, Taylor failed to provide sufficient evidence she sought promotion in July or November to withstand a motion for summary judgment. *See Ben–Kotel v. Howard Univ.*, 319 F.3d 532, 536 (D.C. Cir. 2003) ("A party opposing a motion for summary judgment must point to more than just 'a scintilla of evidence' supporting [her] position; 'there must be evidence on which the jury could reasonably find for the plaintiff' ") (quoting *Anderson*, 477 U.S. at 252).

Not only did Taylor fail to raise a genuine issue with regard to her eligibility for promotion, she also failed to point to any circumstance giving rise to the inference she was denied the promotion because of her race. Taylor's claim rests solely upon Hedlin's having promoted four "Caucasian" employees from GS–11 to GS–12. The undisputed facts show, however, that those individuals were not situated similarly to Taylor. Three were archivists who had spent over ten years in grade GS–11 before Hedlin promoted them; the other was a supervisory archivist "in a career ladder position GS–11/GS–12." Because Taylor falls far short of showing that Hedlin promoted "other employees of similar qualifications," *Bundy*, 641 F.2d at 951, the district court properly held her claim fails as a matter of law, irrespective of her eleventh-hour allegation that she sought promotion after she had spent sufficient time in grade.

3. Count III: Retaliation

Taylor claims Hedlin changed her first-line supervisor and modified her Performance Plan in retaliation for her having filed a complaint with the EEOC. Relying upon the lack of evidence of any "substantive change" or of an increase in Taylor's workload as a result of these arrangements, the district court concluded that neither constituted an adverse employment action.

Taylor argues the district court erred in failing to consider evidence demonstrating that the changes of which she com-

plains were retaliatory. Whether they were retaliatory is immaterial, however, if they were not adverse employment actions. Taylor does not point to a scintilla of evidence suggesting these changes had a material adverse effect upon the terms or conditions of her employment. *See Freedman v. MCI Telecomm. Corp.*, 255 F.3d 840, 844 (D.C. Cir. 2001). Because Taylor did not present any evidence upon which one could reasonably find she suffered an adverse employment action, the district court properly granted summary judgment in favor of her employer on Count III.

## III.   Conclusion

Taylor also raises various procedural objections, none of which merits treatment in a published opinion. For the foregoing reasons the judgment of the district court is

*Affirmed.*