**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

```
_____
                               )
JAMES O. BOLDEN,               )
                               )
            Plaintiff,         )
                               )        Civ. No. 04-1905(EGS)
       v.                      )
                               )
DONALD C. WINTER, Secretary    )
Of the Navy,                   )
                               )
            Defendant.         )
_____)
```

## MEMORANDUM OPINION

This case involves a discrimination claim brought under Title VII and the Rehabilitation Act on the basis of sex, race and disability. James O. Bolden ("plaintiff"), a black male with a claimed disability, alleges that the Secretary of the Navy ("defendant")[1] failed to promote him from GS-11 to GS-12 but instead promoted a Filipina female employee without a disability. Defendant alleges that plaintiff was not qualified for the promotion and that he is not comparable to a female employee who did receive the promotion. Pending before the court are the parties' cross-motions for summary judgment. This Court **DENIES**

---

[1] Donald Winter, Secretary of the United States Department of the Navy, has been automatically substituted for his predecessor pursuant to Fed. R. Civ. P. 25(d)(1).

1

plaintiff's Motion for Summary Judgment and **GRANTS** defendant's Cross-Motion for Summary Judgment.

## I.    BACKGROUND

Plaintiff, who represents himself, is a former employee of the Department of Navy, Bureau of Medicine and Surgery ("BUMED"). Compl. at 3.  Prior to working at BUMED, Bolden worked as an accountant for the U.S. Department of Justice in the U.S. Marshals Service and the Community Oriented Policing Services as well as for the U.S. Soldiers' and Airmen's House.  Compl. at 3-4.  Plaintiff holds an ABS degree in Business Administration with an emphasis in accounting.  Compl. at 4.  He was hired on June 18, 2000, as an operating accountant, GS-0510-11, and was employed by BUMED until June 27, 2003, when he entered into disability retirement.  *See* Compl. Ex. J (Notification of Personnel Action).

Steven Sninsky and Robert Andersson[2] were plaintiff's first- and third-level supervisors, respectively.  Compl. at 3, 5. While at BUMED, Plaintiff was in a "career ladder" position, which allows for non-competitive promotion between GS grades 9, 11, and 12.  Def.'s Mem. at 2 (citing sealed Ex. 13, Dep. of James Bolden at 41).  According to the Navy Merit Promotion

---

[2] Since this litigation has commenced, Robert Anderson has legally changed the spelling of his surname to Andersson.

2

Procedures Manual, "employees are given grade-building experience and are promoted without further competition when they demonstrate the ability to perform at the next higher grade level, meet regulatory and qualification requirements, and there is enough work at the full performance level for all employees in the group." Def.'s Mot. for Summ. J., Ex. 2 at 1. Vincent Vaccaro, the Navy's Director for Civilian Personnel Programs, stated that promotion is conditioned on an employee meeting the time in-grade requirements and demonstrating the ability to successfully perform the duties and responsibilities of the higher grade level. *Id.* at Ex. 3 (Aff. of Vincent Vaccaro). Even if an employee has successfully performed at his current level, promotions are not guaranteed, as a supervisor may elect against promotion if s/he feels the employee is not capable of performing successfully at the higher level. *Id.*

Bolden stated that on June 20, 2000, two days after being hired, he submitted a "Statement of Physical Ability for Light Duty Work" informing the Navy of certain physical limitations. Compl., Ex. B. It is unclear from the evidence presented whether Bolden's supervisors were aware that he filed this statement. Andersson testified that Bolden never requested any accommodation related to a disability and that he was unaware that Bolden was disabled. Def.'s Mot. for Summ. J., Ex. 6 (Aug. 24, 2004 Aff. of Andersson). Sninsky stated that while he did

3

observe that plaintiff walked with a limp, he was unaware of Bolden's status as disabled.[3]  *Id.* at 10 (Aug. 19, 2004 Dec. of Sninsky).  Sninsky also stated he did not see any impact of Bolden's claimed disability on his ability to do work and that Bolden never asked for any accommodations.  *Id.*

In a performance review of Plaintiff's work from the period of October 1, 2000, through September 30, 2001, plaintiff received a score of "acceptable" indicating his work met all of the critical elements in the review.  Compl., Ex. C.  To attain a rating of "acceptable" according to the BUMED Civil Performance Management Form, all critical elements must be rated as "met."  Compl., Ex. C.

The critical elements and standards are defined as:

(1) REGARD FOR QUALITY Completes objectives and work assignments with a focus on outcomes that reflect improvements for internal and external customers.  (2) RESOURCE MANAGEMENT Reduce inefficiencies in the system by planning and goal setting; creating or improving programs, procedures, or systems, displaying persistence and a concern for efficiency by promoting partnering and collaboration among stakeholders.  (3) LEADERSHIP AND MANAGEMENT Seizes the opportunity to advance the vision/mission of Navy Medicine.  Positions self as the leader and strives to ensure that everyone buys into the mission.  (4) DIAGNOSTIC CAPABILITY Seeks information from multiple sources to deal with various situations; is sensitive to the needs, interest, and agendas of others; and, identifies the resolution of issues.  (5) INFLUENCE Uses convincing strategies to

---

[3] Bolden has not clearly stated in his pleadings that he fits the definition of disabled required to sue under the Rehabilitation Act.  For the purposes of Defendant's Motion for Summary Judgment, the Court accepts that Bolden meets the standard.

4

influence individuals or groups to the organization's views; demonstrates awareness of political sensitivity; displays concern for image.

Compl., Ex. C.

Plaintiff was "rated" by Sninsky and "reviewed" by Andersson. *Id.* The performance review for October 2000 through September 2001 states, under the heading of "Strengths & Accomplishments," that "Mr. Bolden has continued to play an important role in the daily operations of the Accounting Division. Never afraid to get involved in new endeavors, gather and analyze required information, or think outside of the box, Mr. Bolden is a valued member of the Accounting Operations Division team." *Id.* Under the heading, "Area(s) of Focus and Emphasis," the review states that Bolden "worked tirelessly with [BUMED] codes to develop standards for data collections to meet other reimbursable billable requirements," "[s]pearheaded the NAVTRANS led effort to update all BUMED field activity Department of Defense Address Activity Codes," and "[a]ggressively researched and reconciled prior year account balances to free up funds for return to TMA." *Id.* Plaintiff was also recognized in this review for having presented at the summer session of the NSHS Financial and Material Management Training Course ("FMMTC") class. *Id.* In his performance review for the period of October 1, 2001, through September 30, 2002, Bolden again received an

5

assessment of "acceptable" as rated by Sninsky and reviewed by Maureen Queenan-Flores. *Id.*

In January 2002, approximately eighteen months after plaintiff commenced work at BUMED, Sninsky submitted the names of Bolden and his co-worker Jenny Carlos to Andersson for promotion to the GS-12 level. Pl.'s Reply and Opp'n, Ex. 1 (email). Sninsky stated that at the time that he submitted plaintiff's name, he thought promotion was automatic upon reaching the time-in-grade requirement and independent of the employee's skill or ability. Def.'s Mot. for Summ. J., Exh. 11 (Jan 7, 2008 Aff. of Sninsky). He stated that had he known the actual requirements, he would not have recommended Bolden's promotion to GS-12. *Id.* According to Andersson, the same certificate referred Bolden, Carlos (female of Filipino origin) and Wanda Creech (Black female) for promotion.[4] *Id.* at Ex. 6.

Within two or three weeks of recommending Bolden and Carlos for promotion, Andersson told Sninsky that he wanted both of them to attend the FMMTC, a twelve-week training in fiscal and material management. *Id.* at Ex. 5 (Jan. 7, 2008 Aff. of Andersson), Ex. 10. According to Andersson, this course is a general requirement for new employees and something that he

_____

[4] Bolden also compares himself to two other employees who were promoted: (1) Jane Cunningham – a white female with no disability – who was already a GS-12 when she began work at BUMED; and (2) Raymond Anderson, plaintiff's second-line supervisor.

6

viewed as specifically necessary for Bolden to get his skills and performance up to the GS-12 level. *Id.* at Ex. 6 at 3-4. Andersson stated that, in addition to Bolden attending the FMMTC training, he wanted Sninsky to work with Bolden for an additional six months prior to promoting him. *Id.*

In March 2002, plaintiff learned that Carlos had been promoted to GS-12 and inquired with Sninsky as to the status of his own promotion. Pl.'s Reply and Opp'n, Ex. 1. Sninsky informed plaintiff that Andersson wanted him to complete the FMMTC as a "prerequisite to promotion." Def.'s Mot. for Summ. J., Ex. 8 (email). Evidence on the record reflects that Bolden was enrolled in the FMMTC class commencing on July 8, 2002 and ending on September 28, 2002. *Id.* at Ex. 13. Plaintiff did attend a spring 2002 FMMTC for approximately one week but did not return to class. *Id.* at Ex. 10. Bolden claims that he was unable to attend the classes because he had to go on medical leave in early May 2002. Def.'s Mem., Ex. 9.

On April 18, 2002, Plaintiff contacted an Equal Employment Opportunity ("EEO") Counselor at the Department of the Navy. *See* 29 C.F.R. § 1614.105(a)(1). On July 3, 2002, plaintiff filed a formal administrative complaint of discrimination based on race, color, disability, sex, and reprisal. Def's Mot. to Dismiss, Ex. 4 (Formal Complaint of Discrimination). That complaint was dismissed as untimely by the Department of the Navy on August 23,

7

2002.  *Id.* at Ex. 5 (Aug. 23, 2002 Letter from Isaac Oliver to James O. Bolden).  Plaintiff appealed the dismissal to the Equal Employment Opportunity Commission ("EEOC").  *See Bolden v. England*, Appeal No. 01A30279 (E.E.O.C. Mar. 24, 2004) (Decision).  On March 24, 2004, the EEOC reversed the Department of the Navy's determination, and the complaint was remanded to the agency for investigation of the allegations.  *Id.*

The agency sent a letter to plaintiff on June 17, 2004, detailing what issues were accepted for investigation, how "[t]he scope of the investigation will be limited" to these issues, that "the EEO investigator is not authorized to inquire into any other matters," and if plaintiff had other matters he wished to complain about, he had to see an EEO Counselor immediately.  Def.'s Mot. to Dismiss, Ex. 7. (Memo. from Chief of Staff to Mr. James O. Bolden, June 17, 2004).  The agency identified two issues that plaintiff complained were evidence of discrimination:  (1) Plaintiff alleged that his supervisor discriminated against him when he held up his promotion to GS-12 by imposing additional requirements on him but not on a female co-worker who received her promotion; and (2) Plaintiff alleged that recent scrutiny of his work performance caused him undue stress, tension, and anxiety resulting in him receiving medical treatment and medication.  The EEO counselor acknowledged Bolden's claim that the alleged discrimination was based on race (Black), color

8

(Black), sex (male), reprisal (prior EEO activity), and disability (physical and mental). Def.'s Mot. to Dismiss, Ex. 7.

The investigation began on August 24, 2004, and concluded on September 30, 2004. *Id.* at Ex. 8 (Report of Investigation). The EEO investigator reviewed documents and spoke with plaintiff's supervisors at BUMED and other personnel. *Id.* at 4-6. The Report of Investigation, date stamped October 13, 2004, states that "[o]n September 10, 2004,[plaintiff] was provided an opportunity to respond to Mr. Andersson's testimony. But the certified mail to [plaintiff] was unclaimed, and he also failed to respond to the correspondence sent to him by first class mail on the same date." *Id.* at 7.

On November 3, 2004,plaintiff filed this lawsuit, prior to receiving a final decision from the agency. Plaintiff's complaint, which he amended on June 29, 2005, raised a number of issues and claims against a number of defendants in this matter. On March 27, 2006, this Court, ruling on parties' cross-motions for summary judgment, dismissed all of plaintiff's claims except for his Title VII and Rehabilitation Act of 1973 discrimination claim on the basis of race, sex, and disability (physical and mental) based on the Navy's failure to promote him from GS-11 to GS-12. Mem. Op. & Order (March 27, 2006).

9

## II. DISCUSSION

## A. Standard of Review

Summary judgment should be granted only if the moving party has shown that there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Waterhouse v. District of Columbia*, 298 F.3d 989, 991-92 (D.C. Cir. 2002) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986)). The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *See Celotex*, 477 U.S. at 323.

In determining whether a genuine issue of material fact exists, the court must view all facts in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986) (citation omitted). The non-moving party's opposition, however, must consist of more than mere unsupported allegations or denials and must be supported by affidavits or other competent evidence setting forth specific facts showing that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324. Moreover, if the evidence favoring the non-moving party is "merely colorable, or is not significantly probative, summary judgment

10

may be granted." *Anderson*, 477 U.S. at 249-50 (internal citations omitted).

Although summary judgment "must be approached with special caution in discrimination cases, a plaintiff is not relieved of her obligation to support her allegations by affidavits or other competent evidence showing that there is a genuine issue for trial." *Morgan v. Fed. Home Loan Mortgage Corp.*, 172 F. Supp. 2d 98, 104 (D.D.C. 2001), *aff'd*, 328 F.3d 647 (D.C. Cir. 2003) (citations and internal quotation marks omitted); *see also Marshall v. James*, 276 F. Supp. 2d 41, 47 (D.D.C. 2003) (noting that special caution "does not eliminate the use of summary judgment in discrimination cases") (citing cases). The court views summary judgment motions in discrimination cases with the appropriate caution, but the court cannot overlook a plaintiff's failure to submit evidence that creates a genuine factual dispute or entitlement to judgment as a matter of law. *See Wada v. Tomlinson*, 517 F. Supp. 2d 148, 180-81 (D.D.C. 2007) (finding that even though the "special standard" applied to motions for summary judgment in employment discrimination cases is "more exacting, it is not inherently preclusive" of a grant of summary judgment in favor of defendants).

**B.    *McDonnell Douglas* Framework**

Plaintiff claims discrimination under Title VII and the Rehabilitation Act. Title VII makes it unlawful for a federal

11

government employer to discriminate "based on race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-16(a). The Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability" may be discriminated against by a federal agency "solely by reason of her or his disability." 29 U.S.C. § 794(a).

Where there is no direct evidence of discrimination, the court applies the *McDonnell Douglas* burden-shifting framework under which the plaintiff must first establish a *prima facie* case of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973). Disability discrimination claims brought pursuant to the Rehabilitation Act are subject to the same *McDonnell Douglas* burden-shifting standard as Title VII claims. *See Rosell v. Kelliher*, 468 F. Supp. 2d 39, 44 (D.D.C. 2006). Accordingly, the Court analyzes all discrimination claims together. Under the *McDonnell Douglas* framework, the plaintiff has the initial burden of establishing a *prima facie* case by a preponderance of the evidence. *See McDonnell Douglas*, 411 U.S. at 802; *Stella v. Mineta*, 284 F.3d 135, 144 (D.C. Cir. 2002).

In most cases, to make out a *prima facie* case of discrimination, a plaintiff must demonstrate that: "(1) [he] is a member of a protected class; (2) [he] has suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination." *Czekalski v. Peters*, 475 F.3d

12

360, 364 (D.C. Cir. 2007) (quoting George v. Leavitt, 407 F.3d 405, 412 (D.C. Cir. 2005)); *Stella*, 284 F.3d at 145. In certain circumstances, however, such as where the plaintiff sought only an increase in grade and pay and not promotion to a vacant position, the D.C. Circuit has found that "'the traditional *McDonnell Douglas* test does not fit'" and the Court therefore "'adjust[s] the *McDonnell* [*Douglas*] formula to ask whether a similarly situated person . . . requested and received the benefit [plaintiff] sought.'" *Taylor v. Small*, 350 F.3d 1286, 1294 (D.C. Cir. 2003) (quoting *Cones v. Shalala*, 199 F.3d 512, 517 (D.C. Cir. 2000)). In *Taylor*, the D.C. Circuit clearly outlined what is required in order for a plaintiff to make out a *prima facie* case of discriminatory refusal to promote where the plaintiff is only claiming entitlement to an increase in pay or grade based on current responsibilities rather than promotion to a vacant position. "[T]he plaintiff must show that she sought and was denied a promotion for which she was qualified, and that 'other employees of similar qualifications . . . were indeed promoted at the time the plaintiff's request for promotion was denied.'" *Id.* (quoting *Bundy v. Jackson*, 641 F.2d 934, 951 (D.C. Cir. 1981)).

Should the plaintiff succeed in making out a *prima facie* case, the "burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason" for its actions.

13

*McDonnell Douglas*, 411 U.S. at 802.  Defendant only has the burden of production and "need not persuade the court that it was actually motivated by the proffered reasons."  *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981).

The plaintiff must then demonstrate that the employer's stated reason was pretextual and that the true reason was discriminatory.  *Stella*, 284 F.3d at 144.  According to *Aka v. Washington Hospital Center*, 156 F.3d 1284 (D.C. Cir. 1998), the pretextual analysis proceeds by considering:

> whether the jury could infer discrimination from the combination of (1) the plaintiff's *prima facie* case; (2) any evidence the plaintiff presents to attack the employer's proffered explanation for its actions; and (3) any further evidence of discrimination that may be available to the plaintiff (such as independent evidence of discriminatory statements or attitudes on the part of the employer) or any contrary evidence that may be available to the employer (such as evidence of a strong track record in equal opportunity employment).

*Id.* at 1289.  "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff."  *Reeves v. Sanderson Plumbing Prod., Inc.,* 530 U.S. 133, 143 (2000) (quoting *Burdine*, 450 U.S. at 253).  "As courts are not free to second-guess an employer's business judgment," a plaintiff's mere speculations are "insufficient to create a genuine issue of fact regarding [an employer's] articulated reasons for [its decisions]

14

and avoid summary judgment." *Branson v. Price River Coal Co.*, 853 F.2d 768, 772 (10th Cir. 1988).

## C.    Failure to Promote

To survive summary judgment in an action for failure to promote, a plaintiff must show (1) that he sought and was denied a promotion, (2) for which he was qualified, and (3) that another employee of similar qualifications was promoted at the time the plaintiff's request for promotion was denied. *Taylor*, 350 F.3d at 1294. Bolden has demonstrated the first element -- that he sought and was denied a promotion -- but he has not clearly demonstrated the latter two elements.

Plaintiff alleges discrimination on account of his race, sex, and disability based on the Navy's failure to promote him from the GS-11 level to GS-12 in 2002. Plaintiff claims that he met the requirements to receive a career promotion to a GS-12 level but was denied that promotion. Compl. at 5. Plaintiff also argues that he was qualified for the promotion because he was given responsibility for the GS-13 level functions of Tom Bezila. Pl.'s Reply and Opp'n at 3. Plaintiff points to his performance evaluations, which praise his involvement in the division, his tireless work, his aggressive research, and his spearheading of a BUMED accounting initiative. Compl., Ex. C. Plaintiff further claims that similarly situated white, female

15

and/or non-disabled employees were promoted under different standards of performance. Pl.'s Reply and Opp'n at 7.

Defendant argues that plaintiff cannot make out a *prima facie* case of discrimination because he was neither qualified for a career promotion to the next higher grade level nor can he point to similarly situated employees who were promoted when he was not. Def.'s Mem. at 1. Defendant notes that the determination of an employee's qualifications for promotion is a personnel decision in the discretion of an employer. *See* 5 U.S.C. § 7106. Defendant maintains that the fact that Bolden had met the time-in-grade requirement did not automatically qualify him for a promotion.

### 1. Plaintiff's Qualifications

In order for Bolden to make out his *prima facie* case of discrimination, he must demonstrate that he was qualified to be promoted to the GS-12 level. "An essential requirement for a *prima facie* case of discrimination based on failure to promote is plaintiff's qualification for the promotion position. A career-ladder promotion is contingent on the employee's ability to perform at the next higher grade." *Nails v. England*, 311 F. Supp. 2d 116, 122 (D.D.C. 2004) (internal citation omitted). According to the Merit Promotion Procedures Manual, "[e]mployees are not entitled to promotion at any time and no promise of promotion is implied by selection to a career ladder position."

16

Def.'s Mot. for Summ. J., Ex. 2. The Manual states that an employee in a career-ladder position may not be promoted "due to inability to perform at the higher grade level, within a reasonable amount of time." *Id.*

Defendant does not dispute that plaintiff met the one-year time-in-grade to be eligible for a promotion. Defendant does dispute, however, that plaintiff was qualified for a promotion. Specifically, defendant argues that plaintiff failed to meet the performance requirements for a promotion to a GS-12 because he was lacking "in-depth knowledge of Navy Medical Accounting and of BUMED Financial Management Organization" and produced errors stemming from "unfamiliarity with BUMED accounting and plaintiff's reluctance to ask others for assistance and be a team player, all of which are necessary for a GS-12 employee of an accounting team." Def.'s Mem. at 12 (citing Ex. 5 6, 8, 17). Andersson, who decided whether or not Bolden was promoted, testified that "[he] did not think that [Bolden] was performing at the GS-11 level. There were a lot of errors in his work, and unfamiliarity, and questioning of others. It was clear that he did not understand and was too proud to ask questions." Def.'s Mot. for Summ. J., Ex. 6 at 3. Additionally, Andersson noted that plaintiff often submitted his work directly to him rather than following the chain of command. *Id.* at 4.

17

Plaintiff has not shown that his qualification required his promotion; he failed to demonstrate to his supervisors that he was able to perform at the GS-12 level.  The evidence on the record indicates that Bolden's first level supervisor, Sninsky, "frequently noted errors in plaintiff's work, some of which were basic, and did not feel that plaintiff had the understanding and familiarity with the BUMED accounting system or organization necessary to perform at the GS-12 level."  *Id.* at 12. Specifically, Sninsky sent an e-mail to plaintiff on April 27, 2002, correcting errors in his work and stating that "this is a performance issue which you need to address immediately;" on May 3, 2002, Sninsky sent another e-mail to Bolden correcting an error and stating that "[t]his is another simple line of accounting error that needs to be corrected."  Def.'s Reply and Opp'n at 10 (quoting Exs. 2, 3).  There is also evidence on the record that plaintiff's failure to complete the FMMTC training course -- which was meant to bring his work-product and understanding of accounting up to the level of a GS-12 -- was a major factor in his failure to secure a promotion from defendants.  *Id.* at 10.  While plaintiff has produced evidence that he attended other training courses while employed by BUMED, he does not contest that he elected not to attend the FMMTC course, as required of new employees.  *Id.* at 7.

18

Plaintiff's performance evaluations do suggest that he was performing well and meeting all of the requirements for his position. Bolden was also given increased responsibility, including being reassigned the tasks of a GS-13 employee, an indication that he may have been performing work that was above his GS-11 status. In *Kilby-Robb v. Spellings*, 522 F. Supp. 2d 148 (D.D.C. 2007), however, the court found that a plaintiff failed to establish that she was qualified for a promotion based solely upon her responsibilities:

> Even assuming that she performed all of the duties she claims to have performed as Acting Team Leader of the PIRC team -- a matter that is contested by [Defendant] -- plaintiff has not demonstrated that such duties alone were sufficient to support a promotion in grade or salary. Plaintiff presented an overwhelming number of exhibits with her opposition, but the bulk of her exhibits were meant "to demonstrate to the court the volume of work she was required to perform." Mere volume of work, however, does not establish that a grade promotion was warranted.

*Id.* at 157 (citation omitted). Bolden has similarly produced evidence that he had a large volume of work and had taken on duties of an employee of higher grade. This, however, is insufficient because plaintiff does not demonstrate that "duties alone were sufficient to support a promotion." *Id.*

In *Wiley v. Glassman*, 511 F.3d 151 (D.C. Cir. 2007), the D.C. Circuit found that a plaintiff failed to offer evidence that her position deserved to be reclassified at a higher grade due to an accretion of more duties and responsibilities. *See id.* at

19

156. The D.C. Circuit noted that the plaintiff offered "virtually nothing to establish what her original duties as a GS-12 International Radio Broadcaster had been, what duties she was performing when she was denied a promotion, and what responsibilities the GS-13 position commonly entailed." *Id.* at 156-57. As in *Wiley*, Bolden has not specifically stated what his duties were or what his new duties would be in order to demonstrate that he was in fact qualified for promotion to GS-12. Bolden points to his "acceptable" ratings in his performance evaluations to indicate that he was qualified for the GS-12 position, but these are only relevant to his GS-11 abilities as that is what they evaluate, and do not clearly show that he was able to perform the tasks of the next level.

In *Luster v. Freeman*, 1980 WL 246 (D.D.C. Oct. 27, 1980), a plaintiff "clearly established" a *prima facie* of discrimination when he was not promoted although he had been eligible for promotion for a significant amount of time, had "many successful years of service," and had received two previous merit promotions. *Id.* at *6. The only negative evaluations the plaintiff received were close in time to associations with another employee who filed a discrimination claim raising suspicions of racially motivated reprisals. *Id.* Based on this evidence, the court concluded that the preponderance of the evidence showed that "but for racial discrimination against him,

20

he would have been promoted to the GS-9 level." *Id.* at *7. In contrast to *Luster*, Bolden was only in service at BUMED for the minimum time required to be promoted to GS-12, and there is evidence on the record that his supervisors felt he would benefit from extended time to meet the requirements of work at the GS-11 level. Bolden does not present compelling evidence that he was definitively qualified for promotion such that he would have been promoted but for discrimination by BUMED.

## 2. Similarly Situated

Neither does Plaintiff satisfy the final part of the *prima facie* test outlined in *Taylor*. Plaintiff must demonstrate that other employees of similar qualifications -- who do not exhibit any of his claimed protected traits -- were promoted at the time his request for promotion was denied. To be similarly situated a "plaintiff . . . must demonstrate that all of the relevant aspects of [his] employment situation were 'nearly identical' to those of [his comparables]." *Holbrook v. Reno*, 196 F.3d 255, 261 (D.C. Cir. 1999) (citation and internal quotation marks omitted).

In *Taylor*, the plaintiff failed to demonstrate that she was similarly situated to other employees receiving promotions. *Taylor*, 350 F.3d at 1295. The plaintiff there pointed to four white employees promoted from GS-11 to GS-12, but the evidence demonstrated that three of the employees had over ten years in grade GS-11 prior to promotion and the other was a supervisory

21

archivist in a GS-11/GS-12 career-ladder position. *Id.*
Similarly, in *Wiley*, the D.C. Circuit held that the plaintiff had
produced nothing to rebut the "clear evidence" offered by the
defendant that the employee to whom plaintiff sought to compare
herself had experienced an increase in responsibilities over time
which justified his promotion. *Wiley*, 511 F.3d at 157.

Plaintiff has failed to establish that his employment
situation was similar in all relevant regards to those with whom
he seeks comparison, the standard in the D.C. Circuit. *See*
*Holbrook*, 196 F.3d at 261. Plaintiff points to three individuals
who he claims were similarly situated to him and who were
promoted when he was not: Jane Cunningham, Raymond Anderson, and
Jenny Carlos. None of the individuals to whom Bolden compares
himself to are similarly situated. Jane Cunningham -- a white
female with no disability -- was already a GS-12 when she began
work at BUMED; she was also in a different department and had a
different first-line supervisor than Bolden. *See* Def.'s Mem. at
13 (citing Ex. 6 at 6). Raymond Anderson was plaintiff's second-
line supervisor and thus also not similarly situated to him. *Id.*

The only *potentially* comparable employee who received a
promotion was Jenny Carlos -- a Filipina female with no
disability. Although Carlos worked in the same department as
Bolden and was hired at the same time, defendant notes that her
previous experience at BUMED and her exemplary record, including

22

being awarded "Civilian of the Quarter" and "Civilian of the Year" in 2001, distinguishes her qualifications from those of plaintiff. Carlos had previously worked at BUMED as an accounting technician for fifteen months prior to returning in 2000 as a GS-11 accountant. At the time that both Bolden and Carlos were considered for promotion, she had worked at BUMED twice as long as plaintiff. Furthermore, Carlos did attend the same FMMTC class in which the plaintiff declined to participate. Though she was unable to complete the course due to a family medical emergency, according to Andersson, her non-completion of the course was not a bar to her promotion because she had already demonstrated an ability to work at the GS-12 level. Def.'s Reply and Opp'n at 8.

Sninsky, who supervised both Carlos and Bolden, testified that "Bolden was not a top performer. He was doing basic work, such as Coast Guard billing and not policy type work or anything else which was considered more advanced and would have required more skill." Def. Mot. for Summ. J., Ex. 11 7. In comparison, "[Carlos] was a much better performer than Bolden. When there were new projects in the office, Jenny Carlos would frequently volunteer, whereas Bolden would not want to be involved." *Id.* at Ex. 11-8.

Plaintiff attaches a number of exhibits to his pleadings in an effort to show that he was similarly situated to Carlos;

however, the evidence neither supports his arguments nor contradicts the key differences pointed to by defendants between plaintiff and his alleged comparators as required to rebut defendant's non-discriminatory explanation.

## III. CONCLUSION

Bolden has not met his burden of demonstrating a *prima facie* case of employment discrimination under *Taylor*. Accordingly, plaintiff's Motion for Summary Judgment is **DENIED**; defendant's cross-motion for Summary Judgment is **GRANTED**. An appropriate Order accompanies this Memorandum Opinion.

**SO ORDERED.**

**Signed:** **Emmet G. Sullivan**
**United States District Judge**
**March 16, 2009**

24